**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

TASER INTERNATIONAL, INC.,

     *Plaintiff*,

v.

PHAZZER ELECTRONICS, INC.,

        CASE NO. 6:16-cv-00366-40KRS

     *Defendant*.

_____/

## MOTION FOR SANCTIONS

Based on Defendant Phazzer Electronics, Inc.'s ("Phazzer") bad faith litigation conduct and willful and repeated failure to comply with this Court's Rules and Orders, and pursuant to Rule 37, Fed. R. Civ. P., and this Court's inherent authority, Plaintiff TASER International, Inc. ("TASER") hereby moves for sanctions, including striking Phazzer's responsive pleading, entering a default judgment, issuing a permanent injunction, and awarding TASER its damages, attorneys' fees and costs.

### A.    PHAZZER'S BAD FAITH NON-COMPLIANCE.

TASER filed this action for patent and trademark infringement, false advertising and unfair competition regarding its conducted electrical weapon (CEW) technology and associated dart cartridges on March 2, 2016.  Since then, as detailed in the timeline attached as Exhibit A, Phazzer has done nothing but stall discovery, conceal relationships, object incessantly, ignore rules, violate express orders, and unnecessarily increase the cost of this litigation.

Because this Court is well familiar with Phazzer's delay tactics and blatant non-compliance, TASER provides the following summary of only Phazzer's most egregious conduct:

1.      Phazzer has expressly and deliberately violated numerous orders of this Court, including but not limited to:

a)      Failing to appear at the June 26, 2017 hearing on its counsel's Renewed Motion to Withdraw (Docs. 164, 172);

b)      Failing to appear at the June 19, 2017 Technology Tutorial Conference (Docs. 152, 158);

c)      Failing to appear for its Rule 30(b)(6) deposition on June 19, 2017 (Docs. 143, 151, 152, 161, 163);

d)      Failing to produce its corporate officers/agents Brandon Womack and Jason Abboud for depositions on June 20 and June 21, 2017, respectively (*Id.*)

e)      Failing to provide the Court dates of availability for depositions in connection with the May 26, 2017 discovery conference (Docs. 137, 142, 143, 151).

These depositions were not only properly noticed (Exhibit B), they were ordered by the Court after at least a dozen scheduling attempts by TASER, as well as several amendments to deposition notices and subpoenas (Phazzer would not accept service for its officers and employees until agreeing to do so at the discovery conference before the Court).

Critically, Phazzer's violations occurred despite clear warnings from the Court that "Failure to comply with this Order may result in imposition of sanctions, which could include entry of a default or a default judgment against Defendant and other sanctions against Defendant and its counsel." (Doc. 152). They also occurred despite Phazzer's counsel's attestation that he

"consistently and thoroughly kept the client updated on a daily basis of all developments, including all Orders of this Honorable Court, and specifically the scheduling order related to upcoming court-ordered depositions [Doc. 152]." (Doc. 163).

2.      Moreover, Phazzer previously <u>agreed</u> to a 30(b)(6) deposition set for March 17, 2017.  Knowing of this deposition for weeks, and knowing that Sang Min and Double Dragon were not going to attend due to jurisdictional and foreign-service issues, Phazzer waited until two days before the deposition to file an "Emergency" Motion for Protective Order.  Phazzer then misled the Court regarding the need for Sang Min and Double Dragon to attend (Doc. 109 at 2), when it turns out these entities are extrinsically intertwined with Phazzer.  With the benefit of hindsight (and Phazzer's course of conduct since that date), it is now clear the Motion for Protective Order was simply a ploy to buy more time.  Indeed, once TASER dismissed Sang Min and Double Dragon to eliminate the reliance on these parties for delay, Phazzer still refused to attend the depositions.

3.      Depositions were only one of many fronts on which Phazzer sought to unreasonably delay this action.  Phazzer repeatedly moved to stay the case (Docs. 41, 44, 57, 104, 139, 150) and objected to discovery requests based on its unsuccessful trademark cancellation and patent reexamination efforts in the USPTO, despite this Court's numerous rulings finding its position without merit (Docs. 43, 53, 98, 141, 151).  Phazzer has also repeatedly requested a "redesignation" of the case to Track 3 to push all deadlines back at least another year (Docs. 20, 45, 57, 104).

4.      Phazzer routinely stalled and objected to discovery based on Local Rule 3.05(c)(2)(B), claiming no discovery could be had because Sang Min had not appeared and did not participate in the parties' August 30, 2016 Case Management Conference.  Phazzer persisted in this untenable position despite the Court's entry of its Case Management and Scheduling

3

Order (Doc. 62) and explicit overruling of this objection in its Order (Doc. 98) granting TASER's 1st Motion to Compel.

5.      Phazzer objected to the production of all sales documentation based on alleged trade secrets and non-disclosure agreements, despite entering into a confidentiality agreement with TASER on October 4, 2016 expressly to address these concerns (Doc. 94-1).   Phazzer continued to object and withhold documents well after the Court overruled these objections (Doc. 98).   Thereafter, what little sales information Phazzer did produce was highly redacted to eliminate all customer and shipping information, even though the documents were marked "Confidential – Attorney Eyes Only" (AEO) under the parties' confidentiality agreement.   This Court granted TASER's 2nd Motion to Compel (Doc. 112), ordering Phazzer to produce unredacted documents.   Phazzer, however, despite its overruled objections, continued to produce redacted documents in a subsequent document production, including in its first ever email production on May 22, 2017, also marked AEO under the confidentiality agreement.[1]

6.      From the get-go in its Motion to Dismiss (Doc. 20), Phazzer has steadfastly denied being a U.S. distributor for Taiwan CEW manufacturer Sang Min and has pointed the finger at Double Dragon as the actual importer of its infringing CEWs.[2]   Accordingly, beginning with its first set of requests for production served on August 20, 2016, TASER has sought

---

[1] These third-party emails are not confidential, are not properly designated as such under the parties' confidentiality agreement, and are the subject for TASER's Motion to De-Designate Confidential Documents or Alternatively to File under Seal (Doc. 166) addressed in this Court's Order (Doc. 170). TASER will supplement this motion to add these documents as Exhibit E following the resolution of its de-designation motion.

[2] Phazzer feigned limited knowledge of Double Dragon.  For example, it stated that the accused products were, "upon information and belief," imported into the U.S. by Double Dragon.  In reality, Phazzer and Double Dragon used the same email server (phazzer.com) and Steven Abboud, an officer of Phazzer, also owned the Doubledragon.com website.   TASER will supplement this motion to add these documents as Exhibit E following the resolution of its de-designation motion (Doc. 166).

documents and information concerning the identity, location and principals of these other entities, and any agreements and communications between them and Phazzer.  Nothing was forthcoming except multiple requests for extension of time, bogus objections overruled by this Court on three separate motions to compel (Docs. 98, 112, 120), redacted invoices intentionally concealing who was shipping the CEWs and from where (like Sang Min directly to Florida), and patently false representations by Phazzer to this Court denying the existence of further responsive documents regarding Sang Min, Double Dragon and Scott Hensler (Docs. 80, 106-1).[3]

Indeed, it was not until March 2017 that Phazzer finally produced a single document in Mandarin Chinese (that TASER then had to incur the expense of translating into English) detailing a joint relationship between Phazzer, Sang Min, Double Dragon, and Scott Hensler (Doc. 99-1).  It is simply inconceivable that Phazzer would not have an English version of this agreement, which granted it exclusive CEW distribution rights in the U.S. and worldwide save five countries in Asia.[4]  Clearly, Phazzer's withholding of this key agreement for more than six months as "privileged" and because its counsel supposedly could not determine the document's responsiveness because he did not speak Chinese (Doc. 74 at 4) can only be characterized as bad faith.

Ultimately, Phazzer could only concoct so many discovery excuses.  It lost three motions to compel and was ordered to produce multiple witnesses for deposition.  In a last-ditch effort to again stay the case with depositions and the technology tutorial looming, Phazzer claimed it

---

[3] Incredibly, a recently produced email identifies Scott Hensler as Phazzer's "R&D Manager," which will be included in TASER's supplemental Exhibit E.

[4] Phazzer also produced a study on its Enforcer CEW only in German, while at the same time distributing an English translation to its own customers and sales leads.

could no longer defend the case due to "very limited financial resources *at this time*" (Docs. 147, emphasis added), although it offered no financial affidavit or bankruptcy filing. This is curious since just the day before, Phazzer issued a press release announcing the launch of its new "Enforcer II CEW", which it touted as a "Safer Credible Alternative Taser." (Exhibit C). And the week before, Phazzer issued two press releases bragging that the PTO granted a second reexam despite TASER's "best efforts to validate their '262 patent,'" and stating that TASER "lost the multi-million US dollar Colombia National Police Bid for 1000's of CEWs" to a "Phazzer licensee," while falsely accusing TASER of misconduct in the tender (which itself could be added to TASER's list of false advertising claims). (*Id.*). Brandon Womack, a no-show for his deposition on June 20, is listed as Phazzer's press contact for these releases. The litigation is in the courtroom, <u>not</u> in the press, but Phazzer's public statements severely undercut its tale of financial woes. Regardless, there is no excuse for Phazzer's blatant violation of this Court's orders and its pervasive bad faith conduct throughout this entire case. Judge Spaulding stated as much in her Order denying Phazzer's latest attempt to stay the proceedings: "Accordingly, because it appears that Phazzer, with the assistance of its counsel, is attempting in bad faith to further delay this litigation rather than in a good faith attempt to resolve the case, I will not recommend that the Court stay the litigation." (Doc. 151 at 2).

### B.    LEGAL STANDARD WARRANTS DEFAULT SANCTION.

Rule 37 confers upon district court judges broad discretion to fashion appropriate sanctions for the violation of discovery orders. *Malautea v. Suzuki Motor Co*. Ltd., 987 F.2d 1536, 1542 (11th Cir. 1993). The Rule expressly authorizes sanctions where a party fails to comply with a discovery order, or fails to attend its own deposition, both applicable here. *See* Fed. R. Civ. P. 37(b)(2)(A), (d)(1)(A)(i) (applying to a party or a party's officer, director, or person designated under Rule 30(b)(6) who fails to obey an order to provide or permit discovery

or to appear for that person's deposition).   Both sections of the Rule permit a variety of severe sanctions, including:

- striking pleadings in whole or in part;

- rendering a default judgment against the disobedient party; and

- treating the failure to obey as contempt of court.

*Id*. at 37(b)(2)(A)(iii), (vi), (vii); 37(d)(3).   *See also U.S. v. Certain Real Prop. Located at Route 1, Bryant, Ala.*, 126 F.3d 1314, 1317 (11th Cir. 1997) (Rule 37 deals with sanctions when a party fails to cooperate in discovery and "allows the court to strike out pleadings and render default judgment against the disobedient party.").

Rule 37 further provides that "the court *must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."   Fed. R. Civ. P. 37(b)(2)(C), (d)(3) (emphasis added).   *See also Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 257 (1975) (acknowledging a court's "inherent power" to "assess attorneys' fees for the 'willful disobedience of a court order'" or when a party has "acted in bad faith").

As stated by the Supreme Court in *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 763-64 (1980), "Rule 37 sanctions must be applied diligently both 'to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent.'" (quoting *National Hockey League v. Metropolitan Hockey Club*, Inc., 427 U.S. 639, 643 (1976) (per curiam)).   Accordingly, imposition of sanctions in appropriate cases is not only necessary to protect "the due and orderly administration of justice," but to "maintain[ ] the authority and dignity of the court." *Id*. at 764 (quoting *Cooke v. U.S.*, 267 U.S. 517, 539 (1925)).   "It is not the court's function to drag a party kicking and screaming

through discovery." *Telectron, Inc. v. Overhead Door Corp.,* 116 F.R.D. 107, 134 (S.D. Fla. 1987).

Although the sanction of default "ought to be a last resort," a party's "willful or bad faith disregard" for discovery orders may warrant this ultimate sanction, particularly where, as here, the discovery violations are preceded by an express order of the court compelling discovery and a warning that the party's failure to comply may result in the entry of default. *See Certain Real Prop. Located at Route 1,* 126 F.3d at 1317-18. *See also BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1050 (11th Cir. 1994) (Because Rule 37 sanctions implicate due process rights, record must reflect that sanctioned party was previously on notice of necessity to produce discovery in question). As stated in *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, the key to issuing the ultimate sanction "is a finding of bad faith," which may be demonstrated by, *inter alia*, "delaying or disrupting the litigation or hampering enforcement of a court order." 561 F.3d 1298, 1306 (11th Cir. 2009) (affirming imposition of discovery sanctions, including striking contractor's answer/counterclaim and entering default judgment, where contractor acted in bad faith).

Both the Eleventh Circuit and this Court have stricken pleadings and entered default judgments under circumstances similar to those presented here. *See, e.g., In re Sunshine Jr. Stores, Inc.*, 456 F.3d 1291, 1306 (11th Cir. 2006) (finding "clear history of bad faith stonewalling" justified district court's decision to enter judgment against misbehaving party, whose conduct "forfeited its opportunity to dispute ... its liability."); *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) (affirming district court's decision to strike defendant's answers and enter default judgment in light of defendant's pattern of delay, refusal to obey court orders, and the need to deter others from "flouting discovery orders"); *Osprey Special Risks Ltd. v. Ocean Ins. Mgmt. Inc.,* 2011 WL 4529404, *1-2 (M.D. Fla. Sept. 14, 2011) (defaulting defendant

who repeatedly disobeyed court orders and failed to comply with discovery requests/rules making any attempt to move case forward "futile"); *Pandora Jewelry, LLC v. Cappola Capital Corp.*, No. 8:06-CV-845-T-24MSS, 2009 WL 790129, at *3 (M.D. Fla. Mar. 23, 2009) (striking defendant's affirmative defenses and counterclaims where defendant "engaged in a pattern of non-compliance with the court's discovery orders"). *See also Feagin v. Chinn*, 2017 U.S. Dist. LEXIS 89038 (S.D. Fla. June 8, 2017) (granting Rule 37 sanctions and dismissing the case when plaintiff failed to comply with discovery, to appear at deposition, and to respond to court's show cause order); *Allstate Ins. Co. v. Palterovich*, No. 04–21402–CIV, 2008 WL 2741119, at *5-6 (S.D. Fla. July 12, 2008) (finding party's pattern of bad faith non-compliance with court orders and properly noticed depositions warranted default judgment, as well as attorney's fees in opposing party's favor).

Rule 37's harshest sanctions are warranted here because Phazzer has willfully ignored court orders, intentionally impeded discovery, and obstructed the orderly processing of the case. Phazzer has also plainly stated, both through its former counsel's filings and by its recent actions in boycotting court-ordered depositions, that it has no intention of participating further in this litigation. This is particularly egregious considering Phazzer's continued press releases publishing falsehoods about TASER, while at the same time refusing to litigate TASER's false advertising, patent and trademark infringement claims. Given its recent actions and utter disregard for this Court's Orders, any lesser sanctions would be useless to ensure Phazzer's future cooperation. *See In re Sunshine Jr. Stores, Inc.*, 456 F.3d 1291, 1305 (11th Cir. 2006) (finding no reason to believe that "less drastic sanctions" would ensure compliance with the court's orders).

## C.     RELIEF SOUGHT BY TASER.

Phazzer's deliberate defiance of this Court's Rules and Orders justifies the ultimate sanction—default.  Therefore, TASER respectfully requests that the Court enter an Order:

a.     Striking Phazzer's pending Motion to Dismiss Amended Complaint (Doc. 104) filed on March 10, 2017;

b.     Entering default in favor of TASER on all claims;

c.     Entering an immediate permanent injunction prohibiting Phazzer from making, using, offering for sale, selling, importing, or exporting infringing CEWs and cartridges in the form attached as Exhibit D;

d.     Awarding compensatory damages, including treble damages for willful infringement and false advertising, in an amount to be determined according to an expedited briefing and hearing schedule;

e.     Awarding TASER its attorneys' fees and costs pursuant to 35 U.S.C. § 285, 15 U.S.C. § 1117(a), and as sanctions for Phazzer's bad faith conduct, in an amount to be determined according to an expedited briefing and hearing schedule; and

f.     Such other and further relief as this Court deems just and proper.


### CERTIFICATION UNDER LOCAL RULE 3.01(g)

The undersigned notified William Acree of the intent to file this motion for sanctions, but Mr. Acree was unable to provide a position on behalf of Phazzer.

Respectfully submitted June 26, 2017.

*/s/Ryan T. Santurri*
Ryan T. Santurri, Florida Bar No. 015698
rsanturri@allendyer.com
Brian R. Gilchrist, Florida Bar No. 774065
bgilchrist@allendyer.com
Allen, Dyer, Doppelt & Gilchrist P.A.
255 South Orange Avenue, Suite 1401
Orlando, FL  32801
Telephone: (407) 841-2330
Facsimile: (407) 841-2343

D. Lawrence Letham, Esquire (pro hac vice)
Arizona Bar No. 024727
Letham Law Firm LLC
9588 E. Southern Avenue #51390
Mesa, AZ 85208
Telephone: (602) 904-5402
Facsimile: 480-905-2027
LLetham@LethamLF.com

Pamela B. Petersen, Esquire (pro hac vice)
Arizona Bar No. 011512
Axon Enterprise, Inc.
17800 N. 85th Street
Scottsdale, AZ 85255-9603
Telephone: (623) 326-6016
Facsimile: (480) 905-2027
ppetersen@axon.com
Secondary: legal@axon.com
Attorneys for TASER International, Inc.

**CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY that on June 26, 2017, I electronically filed the foregoing using the Management/Electronic Case Filing ("CM/ECF") system, which will send a Notice of Electronic Filing to the following CM/ECF participants:

D. Lawrence Letham
llethan@lethanlf.com
Letham Law Firm LLC
9588 E. Southern Avenue #51390
Mesa, AZ 85208
Telephone: (602) 904-5402
Facsimile: 480-905-2027
Counsel for TASER International, Inc.

William Cleveland Acree, II
cacree@qpwblaw.com
Quintairos, Prieto, Wood & Boyer, P.A.
255 S. Orange Ave., Suite 900
Orlando, Florida 32801
Tel: 407/872-6011
Fax: 407/872-6012

Pamela B. Petersen
ppetersen@axon.com
Axon Enterprise, Inc.
17800 N. 85th Street
Scottsdale, AZ 85255-9603
Telephone: (623) 326-6016
Facsimile: (480) 905-2027
Counsel for TASER International, Inc.

Hard copy of the foregoing also mailed
first class on June 27, 2017 to:

Phazzer Electronics, Inc.
808 N. Hoagland Boulevard
Kissimmee, Florida 34741

*/s/Ryan T. Santurri*
Ryan T. Santurri, FL Bar #0015698