# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

TASER INTERNATIONAL, INC., n/k/a
AXON ENTERPRISE, INC., a Delaware
corporation,

      Plaintiff - Judgment Creditor,

vs.

PHAZZER ELECTRONICS, INC.,
a Delaware corporation,

      Defendant - Judgment Debtor,

and

STEVEN ABBOUD, a Florida citizen;
PHAZZER GLOBAL CORPORATION, a
Nevis corporation f/k/a Phazzer Global
LLC; and PHAZZER IP, LLC, a Nebraska
limited liability company,

      Impleaded Defendants.

NO. 6:16-cv-00366-PGB-LHP

## TASER'S MOTION FOR DEFAULT AND SANCTIONS AGAINST
## PHAZZER GLOBAL CORPORATION

Based on the pervasive bad faith litigation conduct of Impleaded

Defendant Phazzer Global Corporation, f/k/a Phazzer Global LLC ("Global"),

and pursuant to Fed. R. Civ. P. 11, 37 and this Court's inherent authority,

Judgment Creditor TASER International, Inc. ("TASER") moves for sanctions against Global, including an Order striking Global's responsive pleading (Doc. 665), entering default, and awarding TASER its attorneys' fees and costs.[1]

## I.   INTRODUCTION.

The words "contemptuous," "egregious," "flagrant," and "intentional obstructionist behavior" resulting in willful "abuse [of] the judicial process"—as used by this Court to describe Judgment Debtor Phazzer Electronics, Inc.'s ("Electronics") conduct in the underlying case (Doc. 183)—apply with equal force to Global's conduct in these Proceedings Supplemental. This is because Steven Abboud ("Abboud")—the "General" who commands all things Phazzer—has always controlled Electronics, Global, and the entire defense strategy in this litigation.

Only after the recent disclosure of Global LLC's May 2018 Nevis conversion to Global Corp (Doc. 633, 656) and this Court's compelled production of documents from Global and third parties Michael Coyne ("Coyne"), Venjuris PC, and Adam Stephenson LLC (Doc. 511, 599, 605, 606)—

---

[1] Exhibit numbers referenced herein are to the consolidated set of exhibits filed with TASER's Motion For Default and Sanctions Against Steven Abboud (Doc. 719). For the Court's convenience, a comprehensive Exhibit Index appears at the end of Doc. 719.

documents that have always been within Abboud's control—has Abboud expressly admitted on 4-10-23, he:

- Created Global LLC in Nevis on 6-23-15, was its 100% owner, opened its Nevis bank account and was its signatory, and remained the company's Managing Director until the day he purportedly closed it in 2018 (Ex. 28, RFA Resp. 30, 32, 33);

- Directed Global LLC's conversation to Global Corp on 3-12-18, became Global Corp's Managing Director, opened Corp's Nevis account and was its signatory (*Id.*, RFA Resp. 34, 41, 44);

- Hired Joelle Bordeaux and the Law Firm of Joelle Bordeaux PLLC ("Bordeaux") to jointly represent him and Global LLC in October 2020, at a time when he admittedly was Global Corp's Managing Director. Bordeaux appeared for Global and Abboud personally with Abboud paying her fees and making litigation decisions for both clients (*Id.*, RFA Resp. 47-49);

- Remained Global Corp's Managing Director throughout this litigation until he allegedly resigned before going to prison 4-22-22 for contempt of this Court's injunction (Ex. 26, Rog 30 Resp. re RFA Nos. 52, 54).

But even these substantial admissions are incomplete. As conclusively established in Global's Court-compelled 7-17-23 production, Abboud is and has always been Global's 100% owner (Ex. 64, 66).

With this framework now firmly established, Global's repeated bad faith and obstructionist conduct throughout these Proceedings Supplemental is undeniable and warrants severe sanctions, including default.

## II.   LEGAL STANDARD FOR IMPOSING SANCTIONS.

This Court may, pursuant to Rule 11, Rule 37, and its own inherent powers, impose sanctions on Global for its pattern of bad faith conduct.

**A.    Rule 11 Standard.**  Rule 11 sanctions are warranted "when a party files a pleading that (1) has no reasonable factual basis; (2) is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) is filed in bad faith for an improper purpose." *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998).

"Rule 11 explicitly contemplates imposition of sanctions against a party." *Johnson v. 27th Ave. Caraf, Inc.*, 9 F.4th 1300, 1315 (11th Cir. 2021) (quoting Fed. R. Civ. P. 11(c)(1)). Rule 11 sanctions against a party are particularly appropriate where the party "made a 'knowing factual misrepresentation' or is the 'mastermind' behind the frivolous case." *Id.* (citation omitted). Where a party engages in bad faith conduct and knowingly pursues frivolous claims and misrepresents facts, dismissal or default sanctions are proper under Rule 11 and the Court's inherent powers. *See id.* at 1316 (affirming dismissal of party's claims where party was "mastermind" behind frivolous claims).

**B.    Rule 37 Standard.** Rule 37 confers upon district court judges broad discretion to fashion appropriate sanctions for the violation of discovery orders. *Malautea v. Suzuki Motor Co.* Ltd., 987 F.2d 1536, 1542 (11th Cir. 1993). The Rule expressly authorizes sanctions where a party fails to comply with a discovery order, or fails to attend its own deposition, both applicable here. *See* Fed. R. Civ. P. 37(b)(2)(A), (d)(l)(A)(i) (applying to a party or person

designated under Rule 30(b)(6) who fails to obey an order to provide or permit discovery or to appear for that person's deposition).

An organization's duties in relation to Rule 30(b)(6) depositions and designees is well-established. Organizations have a "duty to present and prepare" a designee "beyond matters personally known to that designee or to matters in which that designee was personally involved." *Continental Cas. Co. v. First Financial Leasing, Inc.*, 716 F. Supp. 2d 1176, 1189 (M.D. Fla. 2010). The duty of preparation requires enabling the designee to give "complete, knowledgeable, and binding answers on behalf of the corporation" through reasonably available sources such as documents, past employees, or other sources. *Id. (quoting Marker v. Union Fid. Life Ins. Co.,* 125 F.R.D. 121, 126 (M.D.N.C. 1989); *see also Hannah v. Armor Correctional Health Svcs., Inc.,* 2020 WL 10692760, *2 (M.D. Fla. Jun. 30, 2020) (corporation must obtain information necessary to answer "from books, records, other officers or employees, or other sources"). And if the organization lacks someone with knowledge on a given topic, "it is not relieved of the duty to prepare" an appropriate designee. *Hannah*, 2020 WL 10692760, *4 (citation omitted).

An organization fails to meet its Rule 30(b)(6) obligations by merely producing a designee and then "seeing what he has to say." *Cont'l Cas. Co.*, 716 F. Supp. 2d at 1189. By extension, a corporate representative's physical presence alone is insufficient—the designee must actually provide adequate

testimony. *Maronda Homes, Inc. of Fl. v. Progressive Exp. Ins. Co.*, 2015 WL 2169234, *2-3 (M.D. Fla. May 8, 2015) (physically present but "completely unprepared" designee constitutes sanctionable failure to appear under Rule 37(d)(1)). Moreover, a completely unprepared designee cannot remedy their shortcomings via "continuation" or repeat sittings, particularly where they remain unprepared in subsequent attempts. *Kartagener v. Carnival Corp.*, 380 F. Supp. 3d 1290, 1296-97 (S.D. Fla. 2019).

Rule 37 permits a variety of severe sanctions for failing to obey discovery orders or adequately appear for a 30(b)(6) deposition, including striking pleadings in whole or in part; rendering a default judgment against the disobedient party; and treating the failure as contempt of court. Rule 37(b)(2)(A)(iii), (vi), (vii); 37(d)(3); *see also U.S. v. Certain Real Prop. Located at Route 1, Bryant, Ala.,* 126 F.3d 1314, 1317 (11th Cir. 1997). Rule 37 further provides that "the court *must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C), (d)(3) (emphasis added); *see also Alyeska Pipeline Serv. Co. v. Wilderness Society,* 421 U.S. 240, 258-259 (1975) (acknowledging court's "inherent power" to "assess attorneys' fees for the 'willful disobedience of a court order'" or when a party has "acted in bad faith"); Doc. 512 at 5 (conveying

this express warning under Rule 37(b) regarding joint and several responsibility for such fees and costs against both counsel and client).

Although the sanction of default "ought to be a last resort," a party's "willful or bad faith disregard" for discovery orders may warrant this ultimate sanction, particularly where, as here, the discovery violations are preceded by an express order of the court compelling discovery supplementation and a warning that the party's failure to comply may result in the entry of joint and several sanctions *See Certain Real Prop.,* 126 F.3d at 1317-18; *see also* Doc. 512 at 5; Ex. 1, Appendix Timeline detailing this Court's repeated sanction warnings and Global's failure to abide by discovery orders). The key to issuing the ultimate sanction "is a finding of bad faith," which may be demonstrated by, *inter alia,* "delaying or disrupting the litigation or hampering enforcement of a court order." *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.,* 561 F.3d 1298, 1306 (11th Cir. 2009) (affirming imposition of discovery sanctions, including striking contractor's answer/counterclaim and entering default judgment, where contractor acted in bad faith). *See also* Doc. 183 at 1, 4-6 (entering default sanctions against Electronics, finding a "pattern of bad faith conduct designed and intended to delay, stall, and increase the cost of this litigation" based on repeated violations of court orders, non-appearance at depositions, and "intentional obstructionist [discovery] behavior" requiring multiple motions to compel), *aff'd, Taser Int'l, Inc. v. Phazzer Elecs., Inc.,* 754

F. App'x 955, 961, 965 (Fed. Cir. 2018) (finding district court did not abuse its discretion in entering default, affirming sanctions order in its entirety).

Both the Eleventh Circuit and this Court have stricken pleadings and entered default judgments under circumstances like those presented here. *See, e.g., In re Sunshine Jr. Stores, Inc.,* 456 F.3d 1291, 1306 (11th Cir. 2006) (finding "clear history of bad faith stonewalling" justified district court's decision to enter judgment against misbehaving party, whose conduct "forfeited its opportunity to dispute ... its liability."); *Buchanan v. Bowman,* 820 F.2d 359, 361 (11th Cir. 1987) (affirming district court's decision to strike defendant's answers and enter default judgment in light of defendant's pattern of delay, refusal to obey court orders, and the need to deter others from "flouting discovery orders"); *Osprey Special Risks Ltd. v. Ocean Ins. Mgmt. Inc.,* 2011 WL 4529404, *1-2 (M.D. Fla. Sept. 14, 2011) (defaulting defendant who repeatedly disobeyed court orders and failed to comply with discovery requests/rules making any attempt to move case forward "futile"); *Pandora Jewelry, LLC v. Cappola Capital Corp.*, 2009 WL 790129, *3 (M.D. Fla. Mar. 23, 2009) (striking defendant's affirmative defenses and counterclaims where defendant "engaged in a pattern of non-compliance with the court's discovery orders").

C.   **Inherent Powers of the Court To Impose Sanctions.**   It is well-established that the Court has inherent powers to impose sanctions for

discovery abuses, violation of court orders, and bad faith conduct. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (citing *Ex parte Robinson*, 19 Wall. 505, 510 (U.S. 1874)). "A court may exercise this power 'to sanction the willful disobedience of a court order, and to sanction a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017) (quoting *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 382 (2013)). A party may act in bad faith by, among other things, "delaying or disrupting the litigation or by hampering enforcement of a court order." *Hutto v. Finney*, 437 U.S. 678, 689 n.14 (1978).

## III. GLOBAL'S PATTERN OF BAD FAITH CONDUCT WARRANTS DEFAULT SANCTION.

From the outset, Global has engaged in a pattern of bad faith conduct resulting in substantial delays, unnecessary costs, and wasted judicial resources. It engaged in a deliberate scheme to hide its entity conversion from TASER and the Court to avoid having the proper entity, its assets, and its incriminating documents exposed in this litigation. Global refused to participate in discovery producing an unprepared 30(b)(6) designee without relevant knowledge who falsely claimed, under penalty of perjury, that Global did not possess or control its own documents. Numerous Global filings and declarations were proffered without any investigation or good faith basis,

requiring TASER to engage in substantial and expensive third-party discovery and motion practice to prove its claims—information and documents Abboud always possessed and controlled as Global's 100% owner. Accordingly, Global's contemptuous obstructionist behavior and willful abuse of the judicial process warrants severe sanctions, including default and an award of fees and costs.

## A. Global's Scheme To Hide Its Corporate Conversion Constitutes Bad Faith.

For over two years, Global participated in this litigation without disclosing that Global LLC had converted to Global Corp—the continuation entity that now owns all of Global's property and assets that are the subject of this action. Global steadfastly denied it had access to *any* company records, falsely claiming Global Corp was a separate and distinct entity over which it had no control, when, in fact, Abboud was in complete control. This ruse alone—committed under penalty of perjury and in direct violation of this Court's discovery orders and sanction warnings—mandates default.

Global failed to disclose its conversion despite mandatory initial disclosures and discovery requests seeking this information (*See* Fed. R. Civ. P. 7.1; M.D. Fla. Local Rule 3.03; Fed. R. Civ. P. 26(a); Doc. 512 at 4-5). Global not only failed to disclose this information, but repeatedly denied having any knowledge of the conversion or continuation entity. In fact, Global's own corporate representative testified he did not know anything about Global Corp

(Ex. 3, 4-21-22 Vaca 86:25-87:14; Ex. 4, 5-6-22 Vaca 30:25-31:3). Phazzer Electronics, Inc.'s ("Electronics") attorney Jason Abboud ("Jason") testified he had no knowledge of the existence of a separate legal entity by the name of Phazzer Global, Inc. or Phazzer Global Corp (Ex. 9, 5-2-22 Jason 86:6-21). Attorney David Logan, counsel for at least Phazzer IP, LLC, stated in a June 2019 email that the "Phazzer Global, Inc. entity referenced in the [Abboud deposition] Subpoena is a non-existent entity." (Doc. 533-12).

Global even provided incorrect information regarding Global Corp and its relationship with Global LLC. While opposing TASER's Motion to Compel in June 2022, Global falsely proclaimed that Global Corp was created as a separate entity in 2019, Global Corp's website was created in 2019, and Abboud and Robinson did not start working for Global Corp until 2019 (Doc. 530-2). It was later revealed that each of these sworn factual assertions were false and that Global was attempting to hide its conversion to hide its documents (Doc. 633 at 6-8; Doc. 633-2; Doc. 633-5). The truth is that Global LLC, at Abboud's express direction, was converted into Global Corp on 3-12-18 (Ex. 28, RFA Resp. 34), and Global Corp is "the same entity that existed before the conversion" (Doc. 633 at 8, quoting Nevis Business Corporation Ordinance of 2017, § 109(1)).

This separate entity charade—which Global continues to perpetuate today without legal or factual authority and in violation of Rule 11 (Doc. 665,

Answer ¶ 8)—was intended to obstruct discovery and avoid Global Corp being added as the proper party. This fiction provides no legitimate cover for Global's wholesale failure to produce documents and ESI prior to the Court's April 2022 supplementation deadline or Global's false declarations that these records were not within its possession, custody, or control. Abboud didn't forget about the conversion (Doc. 645 at 2, 7 & n.5) or fail to understand its legal significance (Ex. 2, 4-12-23 Abboud 188:3-191:17). Indeed, the missing Plan of Conversion that Global and Abboud claimed no knowledge of (Doc. 645 at 11)—signed by Abboud on 3-8-18 as Global's Managing Director—states:

> Current Ownership of LLC's: **I, Steven Abboud at all times since inception of PhaZZer Global LLC and Leonidas LLC have been the sole member, 100% owner and Managing Director of both LLC's.**

> Conversion to IBC: The conversion plan will be to convert both LLC's to IBC's . . . **As the sole member I am authorizing 100,000 shares in both IBC's and issuing 51,000 shares in each of the companies to myself which will give me initial ownership of 100% of the issued capital stock.**

(Ex. 66, emphasis added). Thus, Abboud's sworn Court-compelled (Doc. 597) Rog #5 response regarding Global's ownership, membership and management is a complete fabrication (Doc. 656-8 at 3-5).

## B.   Global's Failure To Prepare Its 30(b)(6) Corporate Representative Constitutes Bad Faith Non-Appearance.

Global's corporate representative, Gustavo Vaca ("Vaca"), was woefully unprepared to answer questions about the company, despite being deposed in

three short sessions over 2 ½ weeks.[2] This Court previously recognized Vaca's complete lack of preparation and knowledge of basic company information (Doc. 542 at 3-4, "the Court is troubled that the person Phazzer Global designated as its Rule 30(b)(6) corporate representative was without knowledge as to the identities and citizenship of the members of Phazzer Global," noting it "defies credulity that the corporate representative of a company would not know the identity, much less the citizenship of its members").

Vaca's lack of preparation and utter lack of knowledge extended well beyond the identity of Global's members. He testified he did not know whether Global "Inc." existed (Ex. 4, 30:11-31:3), whether Global was officially formed in Nevis, where Global's operations were located, or whether Global did business in the United States (Ex. 3, 65:25-66:3, 66:9-18, 93:2-8; *but see* Doc. 423-1, Global Decl. signed by Vaca submitted on personal jurisdiction challenge). He did not know who was making litigation decisions for Global, where Global emails were stored, or anything about Global's bank accounts (Ex. 3, 64:7-10, 73:20-22, 86:21-23), all topics contained in the 30(b)(6) notice (Doc. 528-4 at 5-6).

---

[2] Vaca's remote (Ecuador) deposition began on 4-21-22 (Ex. 3), but was truncated by a medical appointment he inexplicably scheduled that same morning (Doc. 529-2, ¶ 10). The deposition resumed on May 6 (Ex. 4) and again on May 9 (Ex. 5), but despite this additional time Vaca and Global did nothing to remedy the lack of preparation.

Incredibly, Vaca did not know anything about Leonidas IP, LLC ("Leonidas") other than its status as a Phazzer trademark owner (Ex. 3, 91:9-16) or anything about the Global/Leonidas Trademark License Agreement referenced multiple times in the Amended RFP Responses he verified (Doc. 529-1 at 13-15, 18, 21) and the *only* document Global had produced in this litigation (Ex. 4, 21:15-22:4; Doc 533-6). Vaca did not even have information regarding documents *filed in his own name* with the USPTO on behalf of Leonidas, including a July 2018 change of address and a June 2021 sworn Declaration of Use and Incontestability, both related to a Phazzer trademark (Ex. 4, 16:15-17:13, 18:24-19:25; Ex. 68 at 1, 13-18).

Vaca admitted he did nothing to prepare for his 30(b)(6) deposition. He testified he never spoke to Abboud—Global's managing director and forming member—in preparation for his corporate deposition (Ex. 3, 68:7-22; Ex. 4, 33:24-34:5). He did not speak to Bordeaux, joint counsel for Abboud and Global, or review any documents other than the 30(b)(6) notice itself (Ex. 3, 13:10-15). He did not review any Global emails, did not search his own Gustavo@phazzerglobal.com email, did not know where Global emails lived, and did not contact Coyne or Michelle Chang to determine what Global documents or email access they might have (*Id*., 74:24-75:12; 79:21-80:10), despite repeatedly stating in his verified Amended RFP Responses that if

documents exist, Chang or Coyne "would have custody, possession, or control of same." (Doc. 528-6).

Indeed, Vaca was unaware of *anything* before 2017 and had never seen any of Global's 2015 Nevis formation documents or bank records (all establishing Abboud as its sole owner), despite Bordeaux's *actual possession* of these documents from Jason's subpoena production prior to Vaca's deposition[3] (Ex. 4, 39:9-43:24). Clearly, Vaca knew nothing because Bordeaux and Abboud wanted it that way and did nothing to prepare him.

A recent "resolution" signed by Vaca and Robinson on 5-11-23 further cements Global's bad faith failure to designate a corporate representative with knowledge about the company (Ex. 90, 5-11-23 Vaca Resolution). This document purports to substitute Robinson for Vaca as Global's new corporate representative (*Id.*).  In it, Vaca states:

- He "does not have intimate knowledge of the operations of PHAZZER GLOBAL, INC. or Phazzer Global LLC, during any period, since he was never the legal or financial representative in charge of any operation that includes the handling of legal documents, banking and possible intercompany agreements that are relevant to the issues of Case '0366"; and

- That Robinson would have been "employed as a manager/executive" of Global LLC *and* Global Corp. "during the period relevant to the

---

[3] TASER received a link to Jason's document production on 4-21-22, but Bordeaux's office received and reviewed these documents for privilege *before* they were produced. Moreover, Jason's deposition was held on May 2 (Ex. 9) with Bordeaux in attendance *before* Vaca's deposition resumed on May 6 and May 9 (Ex. 4-5).

issues of the case" and that "she must have intimate knowledge of both companies' operations, if any, during the same." [4]

(*Id*.). Thus, Vaca admits he was never involved in Global's business or legal decision-making, was not knowledgeable about Global's operations or documents, and never should have been asked to sign declarations or testify as its 30(b)(6) witness in the first place. Such bad faith conduct is sanctionable by default for non-appearance of Global's corporate representative. *E.g.,* Fed. R. Civ. P. 37(b)(2)(A), (d)(l)(A)(i); *Kartagener*, 380 F. Supp. 3d at 1297.

## C.   Global Bad Faith Failure To Produce Documents and Responsive Information In Discovery.

Abboud hired Bordeaux to represent Global in October 2020, when he was admittedly Global Corp's managing director.[5] (Ex. 28, RFA Resp. 30-34,

---

[4] Robinson signed the Resolution accepting this appointment despite her sworn deposition testimony that she was not currently working for Global Corp, historically did "very little" for Global Corp, couldn't remember anything specific she did, and always took direction from Abboud (Ex. 8, 7-12-22 Robinson 67:9-68:4). Her declaration regarding Global Corp's alleged 2019 formation was also without personal knowledge—"Somebody drafted it and I signed it."—and is now demonstrably false (*Id*. 65:18-66:9, 72:12-73:20; (Doc. 530-2).

[5] Abboud claims, without documentation, that he resigned as Global's manager prior to reporting for his criminal contempt sentence on 4-22-22. However, Abboud clearly always had access to and control over Global documents prior to this Court's discovery supplementation deadline under threat of sanctions for non-compliance (Doc. 523 at 9, "**The parties are reminded of the April 8, 2022 deadline for supplementing discovery in this case. *See* Doc. No. 512, at 4–5. Failure to comply with the directives of that Order, or any other Court Orders, may result in sanctions. And, failure to otherwise participate in discovery as otherwise required by the Federal Rules of Civil Procedure, the Local Rules, or Court Orders may result in sanctions.**" (emphasis in original)). Any claim by Abboud that he now lacks access or authority cannot excuse his prior non-compliance.

41, 44, 47-49). While he had the authority to hire counsel and make litigation decisions on behalf of Global (*Id.*, RFA Resp. 34, 41, 44, 47-49), Abboud inexplicably claimed he did not have authority to turn over Global documents (Doc. 529-3). Abboud objected claiming he did not have possession, custody, or control of *any* Global documents and asserted it would be "unlawful" for him to "rifle through" Global's files, computers, and records to produce documents that "do not belong" to him (*Id.*). And, in round-robin fashion, Abboud claimed Vaca would have "legal authority" to provide documents on behalf of Global (*Id.*) while Vaca refused to authorize Robinson to give Coyne server access credentials for production purposes, and Coyne empathically stated he would not produce anything without *Abboud's* express permission (Doc. 529-2 at 8-9).

Global itself also disclaimed possession, custody, or control over its own documents (*See, e.g.,* Doc. 505-2 & 529-1). In its October 2021 disclosure statement, Global identified Abboud as its "manager during any possible, relevant period and, therefore, the only person" with discoverable information (Doc. 505-3), and identified no documents. Yet, according to Global and Abboud, neither had possession, custody, control, or authority to access and produce *any* Global documents.

Global's 6-10-21 response to TASER's first RFP produced a *single* document—a 2015 Trademark License Agreement between Nevis LLCs Leonidas and Global—disclaiming any knowledge, possession, custody, or

control of any other documents (Doc. 529-2 at 2, 5). This Agreement was signed by Abboud as "Manager" for Leonidas and Robinson as "Agent" for Global with its address left blank (Doc. 533-6 at 1, 5-6). Global has never produced any amendment to, or cancellation of, its License Agreement with Leonidas. Yet, despite this contractual relationship and substantial monies flowing through Global to Leonidas, Global failed to disclose any contact information or communications with any person affiliated with Leonidas prior to its belated 7-17-23 massive data dump well after this Court's April 2022 supplementation deadline and the May 2022 completion of Global's 30(b)(6) deposition. Nor did Global disclose or produce any information regarding its bank accounts, statements, or wire transfers, despite Abboud establishing these Nevis accounts and serving as signatory for both Global LLC and Global Corp (Ex. 47; Ex. 28, RFA Resp. 30, 33, 43-44). Global's partial production of bank records on the eve of this Court's 5-16-23 hearing, *more than a year after the supplementation deadline*, does not cure Global's failures and confirms what TASER has said all long—Abboud has always had the ability to obtain these records (Ex. 106) and his verified denials to the contrary constitute a fraud on this Court.

Other than the lone Leonidas-Global License Agreement, all Global documents obtained by TASER prior to Global's 3-2-23 conversion disclosure came from third-party subpoenas:

- Jeffrey Thacker of Sweet & Associates—CPA for Electronics, Abboud, and Phazzer IP—produced 2016 Global statements from a Nevis bank with a mailing address at Abboud's residence in Florida (Doc. 533-1).

- Thacker also produced Global's 6-23-15 Articles of Organization as a Nevis LLC (Doc. 533-2). The Articles, which are not publicly available, do not identify any members or managers and only provide a registered address in Nevis.

- Jason Abboud—Abboud's cousin and former General Counsel for Electronics—produced a 2-page document titled "Business Plan Executive Summary for Phazzer Global, LLC" signed on 7-15-15 by "Steven M. Abboud CEO" and notarized by Diana B. Wiggs (aka Robinson) in Florida (Doc. 533-3).

- Jason also produced a 7-15-15 corporate checking account application for Global with the Bank of Nevis International Ltd., which listed a business/postal office at Abboud's residence in Florida (Doc. 533-4). The application is signed by Abboud as Global's "Chairman" and notarized by Robinson in Florida (*Id.* at 9). Abboud is identified as the *only* director, signatory, and "beneficial owner" (*Id.* at 2, 8).

Even after this Court ordered Global to identify persons who would "have the authority to provide those documents in response to a discovery request" (Doc. 512 at 4-5), Global only listed Coyne and Chang—not Abboud—as "possible custodians" without taking any action to facilitate or authorize production (Doc. 529 at 3, Doc. 529-1). Global has repeatedly failed to produce responsive documents or information despite TASER's discovery requests and this Court's Orders. This bad faith conduct has resulted in significant delays and prejudice to TASER, warranting imposition of default sanctions.

**D.      Global's  Multiple  Filings  Without  Good  Faith  Basis Warrants Sanctions.**

In  addition  to  the  false  filings  regarding  the  entity  conversion  and Global's claims that it did not have possession, custody, or control over its own documents and bank information, Global filed a series of motions without a good faith basis in violation of Rule 11.

**1.      False  Personal  Jurisdiction  Challenge.** On  10-7-20, Bordeaux filed a limited notice of appearance on behalf of Global objecting to personal jurisdiction over the Nevis LLC (Doc. 416). That same day, Bordeaux filed a general appearance for Abboud (Doc. 413). On 10-21-20, Global filed a Motion to Dismiss the Supplemental Complaint against it, alleging lack of personal jurisdiction and other claimed deficiencies (Doc. 423). Global argued it did not have any contacts with Florida and that it "does not conduct any business within the United States." (*Id.* at 5).

This  Court's  4-15-21  Report  and  Recommendation  denied  Global's Motion to Dismiss on all fronts (Doc. 441 at 5-16, 25-36, 38). As to Global's jurisdiction challenge, the only evidentiary support filed was an undated declaration of Global purportedly signed by Vaca (Doc. 423-1) that did not comply  with  the  requirements  of  28  U.S.C.  §  1746  and  was  not  based  on personal knowledge (Doc. 441 at 7-10). The Court therefore disregarded the declaration (*Id.*). Its conclusory allegations were also found to be soundly

contradicted by competent evidence that "Global's principal place of business is in Florida," that Global conducted business there, and that Global "is controlled by Abboud." (*Id*. at 11, 15). As demonstrated above, this truth is undeniable and was known by Abboud—Global's owner and manager—from the outset.

## 2.    False Disclaimer of Member Citizenship Knowledge.

On 3-9-22, this Court issued an Order to Show Cause directing TASER to establish subject matter jurisdiction by showing complete diversity of the parties (Doc. 513). Despite its failure to answer discovery on this very issue, Global then filed a motion to dismiss for lack of subject matter jurisdiction (Doc. 518). TASER issued a Rule 30(b)(6) deposition notice to Global expressly requesting testimony as to "Phazzer Global's historical and present statutory agents, employees, members, managers, owners, officers, attorney, and agents." (Doc. 528-4 at 4). But Global's corporate representative could not identify a single member of Global or their citizenship (Ex. 3, 18:14-18, 84:1-19). As this Court noted, it "defies credulity" that the corporate representative would not know this basic information (Doc. 542 at 4).

Even after the Court held that diversity jurisdiction had been established, Global continued to deny this fact, including in its Answer to the Amended Proceedings Supplemental Complaint (Doc. 547, ¶ 8, stating Global is "[w]ithout knowledge" and "therefore denie[s], that Phazzer Global, LLC has

no Members that are a Citizen of Arizona and/or Delaware"). But Global clearly had knowledge of its members and their citizenship. At the time of its 2018 conversion, Abboud was Global's sole member (Ex. 64). And at all times since Global's 2020 impleader, it was a corporation with Abboud as its sole shareholder (Ex. 42). Such gamesmanship and false statements in Court filings mandate severe sanctions.

       **3.**    **False Corporate Disclosure Statements.** Global filed two false corporate disclosure statements, the first listing "Liposerv Ecuador, S.A." as Global's parent corporation (Doc. 484, ¶ 1), and the second stating Liposerv was "the Majority owner of Phazzer Global, LLC at one point" and "may have an interest in the outcome of this action." (Doc. 527, ¶ 1). But Global's own corporate representative testified that Liposerv was *not* the parent corporation of Global and, in fact, the Ecuador government had shut Liposerv down in October 2019—two full years *before* Global filed its first false corporate disclosure statement (Ex. 3, 31:9-25, 39:1-5; Ex. 5, 5-9-22 Vaca 21:14-22:13, 23:10-15, 30:2-21; Doc. 484). Vaca further admitted that Liposerv has no interest in the outcome of this case (Ex. 5, 28:13-20, 30:2-21). But even after Vaca's testimonial admissions, Bordeaux filed the second disclosure refusing to concede the point (Doc. 527) and continuing to misrepresent Liposerv's interest. As is now clear, Abboud (also Bordeaux's client) was always the 100% owner of Global (Ex. 66, Conversion Plan identifying Abboud as Global's sole

member "at all times since inception"; Ex. 64, 3-1-18 Meeting Minutes). Had Global properly disclosed its true owners, much investigation, discovery, and motion practice could have been avoided. Such bad faith and false filings must have consequences.

## IV.   CONCLUSION AND RELIEF REQUESTED.

Rule 37's harshest sanctions are warranted here because Global has willfully ignored court orders, intentionally impeded discovery, obstructed the orderly processing of the case, and failed to meaningfully appear for its 30(b)(6) deposition. Global's conduct plainly shows it has no intention of genuinely participating further in this litigation. Additionally, if Global is to be believed (we don't), it has no money and cannot pay fees or other monetary sanctions (*See* Ex. 31, 7-17-23 Global RFP Supp. Resp. #1 at 7). Given Global's non-cooperation from the outset of its impleader and utter disregard for its discovery obligations and this Court's Orders, no lesser sanction will ensure Global's future compliance. *See In re Sunshine Jr. Stores, Inc.,* 456 F.3d at 1305 (finding no reason to believe that "less drastic sanctions" would ensure compliance with the court's orders); *see also Taser Int'l, Inc.,* 754 F. App'x at 961 (upholding Electronics' default as "no sanction short of entry of a default judgment" would be adequate).

Global's significant and persistent bad faith conduct throughout these Supplemental Proceedings and deliberate defiance of this Court's Orders

justifies the ultimate sanction—default. The imposition of lesser sanctions would underrepresent the seriousness of the offensive conduct. Accordingly, TASER respectfully requests the Court enter an Order:

A.   Striking Global's responsive pleading (Doc. 665);

B.   Entering default in favor of TASER on all claims against Global in the Second Amended Complaint (Doc. 659)—Count 2 continuation entity and Count 3 fraudulent transfer;

C.   Entering judgment on the continuation entity claim in favor of TASER in the amount of $7,869,578.74 plus all accrued interest on Electronics' 5-11-18 judgment (Doc. 273);

D.   Entering judgment on the fraudulent transfer claim in the amount of $131,573 (Doc. 543, ¶¶ 55, 88);

E.   Awarding TASER its attorneys' fees and costs as sanctions for Global's bad faith conduct, jointly and severally with its counsel, in an amount to be determined by the Court; and

F.   For such other and further relief as the Court deems just and proper.

## LOCAL RULE 3.01(g) CERTIFICATION

Prior to Global's counsel's recent withdrawal (Doc. 715), counsel for TASER had numerous conferences with Ms. Bordeaux regarding its intention to seek default and other sanctions against Global. TASER's offers for a stipulated judgment were rejected such that it believes this Motion is opposed.

RESPECTFULLY SUBMITTED August 23, 2023.

/s/ Pam Petersen
Pamela B. Petersen (*pro hac vice*)
Arizona Bar No. 011512
Gayathiri Shanmuganatha (*pro hac vice*)
Arizona Bar No. 030745
Jake MacKay (*pro hac vice*)
Alabama Bar No. 9600-P97I
AXON ENTERPRISE, INC.
17800 N. 85th Street
Scottsdale, AZ 85255-9603
Telephone: (623) 326-6016
Facsimile: (480) 905-2027
ppetersen@axon.com
legal@axon.com (secondary)

Ryan T. Santurri
Florida Bar No. 015698
ALLEN, DYER, DOPPELT
& GILCHRIST P.A.
255 South Orange Ave., Suite 1401
Orlando, FL  32801
Telephone: (407) 841-2330
Facsimile: (407) 841-2343
rsanturri@allendyer.com

*Attorneys for TASER International, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 23, 2023, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's CM/ECF system upon all counsel of record in the above-captioned case. A copy of the foregoing was also emailed to Steven Abboud at mrmasadi2@yahoo.com.

/s/Pam Petersen
Pamela B. Petersen

26