## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

TASER INTERNATIONAL, INC., n/k/a
AXON ENTERPRISE, INC., a Delaware
corporation,

        Judgment Creditor,

vs.

PHAZZER ELECTRONICS, INC.,
a Delaware corporation,

        Judgment Debtor,

and

STEVEN ABBOUD, a Florida resident;
PHAZZER GLOBAL CORPORATION f/k/a
PHAZZER GLOBAL LLC, a Nevis
business corporation; and
PHAZZER IP, LLC, a Nebraska limited
liability company,

        Impleaded Defendants.

NO. 6:16-cv-00366-PGB-LHP

## TASER'S MOTION FOR SANCTIONS AGAINST ATTORNEY JOELLE
## BORDEAUX AND LAW OFFICE OF JOELLE BORDEAUX, PLLC

Pursuant to Fed. R. Civ. P. 11, 26, and 37, 28 U.S.C. § 1927, and this

Court's inherent powers, TASER seeks monetary sanctions against Joelle

Bordeaux and the Law Office of Joelle Bordeaux, PLLC ("Bordeaux"), counsel

for impleaded defendants Steven Abboud ("Abboud") and Phazzer Global Corporation ("Global Corp"), f/k/a Phazzer Global, LLC ("Global LLC," collectively "Global"), for the perpetuation of unfounded claims and the willing participation in substantial discovery abuses and obstruction that have unnecessarily prolonged and increased the cost of this years-long litigation.[1]

## I.    INTRODUCTION.

The abuses detailed in TASER's motion for sanctions against Abboud (Doc. 719) and Global (Doc. 720) occurred under Bordeaux's watch. Although Bordeaux, a "board certified specialist" in "business litigation" (Ex. 93 at 1), represented Abboud and his entities for almost three years, Bordeaux claims the abuses were perpetuated without her knowledge (Doc. 645 at 2; Ex. 109). Even if this were true (it's not), Bordeaux's claim she was hoodwinked by her clients highlights her failure to comply with the rules of civil procedure (*e.g.*, conduct reasonable investigations), this district's civil discovery handbook (investigate all persons/sources of responsive information), common law (attorney cannot be passive participant in litigation), and her duties as an officer of this Court. Moreover, in the last *six months*, and only after multiple sanction warnings from this Court (Ex. 1 Timeline) and TASER's threatened

---

[1] Exhibit numbers referenced herein are to the consolidated set of exhibits filed with TASER's Motion For Default and Sanctions Against Steven Abboud (Doc. 719). For the Court's convenience, a comprehensive Exhibit Index appears at the end of Doc. 719.

sanctions motion, did Bordeaux demonstrate her ability to obtain corporate records from Nevis (Doc. 645-1), bank records from Nevis (Doc. 692, 5-16-23 Hearing 68:14-18, 75:7-22, 76:13-17) and ~90,000 records from her clients' email accounts (Doc. 656-10, 2; Ex. 117, ¶¶ 3-4). However, fear of sanctions should not be the catalyst for Bordeaux's belated actions. Had Bordeaux timely complied with her obligations (*infra* II), she could have significantly reduced the disputes in this case and the fraud perpetrated on TASER and this Court. Bordeaux's years long "hands off" approach has harmed TASER and this Court and Bordeaux's actions/inactions must have consequences.

   **A.    Bordeaux's Knowledge of Abboud's Control.** Bordeaux's professional relationship with Abboud, his entities, and the people he controls is layered and complex:

- By 10-7-20 Abboud retained Bordeaux to jointly represent him and Global in this case (Ex. 28, 4-10-23 RFA Resp. #47-49; Doc. 413, 416).

- By 4-9-21, Bordeaux hired James F. McNulty ("McNulty"), Abboud's longtime family friend, technical consultant, expert witness, and business associate, as her "paralegal" (Doc. 690 at 7, 690-1, 690-2). Bordeaux now admits McNulty "volunteered" with her firm to reduce Global's and Abboud's legal fees and she never billed a penny for McNulty's time (Ex. 93, Abboud's Control of Bordeaux, 4).

- By 7-29-21 Bordeaux was representing Phazzer LLC (Wyoming entity controlled by Abboud) (*Id*. at 3). On 12-16-21 she filed Phazzer LLC's motion to quash TASER's third-party subpoena (Doc. 490), and shortly thereafter began representing Phazzer LLC in "purchasing" all Phazzer patents and trademarks from Leonidas IP, yet another Nevis entity controlled by Abboud (Ex. 93 at 21-26).

- By 11-10-21 Bordeaux was even helping Abboud with his HOA dispute (*Id*. at 5-6).

At all material times, Abboud was Bordeaux's contact for all things Phazzer/Leonidas. Bordeaux took direction exclusively from Abboud, sent copies of filings to Abboud, organized strategy calls with Abboud, sent her bills to Abboud, and was paid by Abboud (Ex. 28, #47-49; *see also* Ex. 3, Vaca 30(b)(6) 64:7-10, admitting he did not know who was making litigation decisions for Global; Ex. 93, 1-2, 7-13). Although Bordeaux was irrefutably aware Abboud was "The General" of all things Phazzer, Bordeaux helped Abboud further the farce that Gustavo Vaca ("Vaca") owned Global LLC (Doc. 530; Doc. 534), and Abboud and Global did not have possession, custody, or control over responsive information (*Id*; Doc. 719; Doc. 720). Bordeaux's failure to conduct any reasonable investigation and deliberate indifference to the facts perpetuated her clients' obstructionist and dishonest conduct.

## II.    LEGAL STANDARDS FOR IMPOSING SANCTIONS.

**A.    Bordeaux's Obligations As An Officer of the Court.** Because "courts do not have time to micro-manage discovery in every case," lawyers, as officers of the court, "voluntarily make the required disclosures and supplementation" and "advise their clients to make honest, complete, and non-evasive disclosures in discovery matters." *Sexton v. U.S.*, 2001 WL 649445, *1-2 (M.D. Fla. Apr. 12, 2001) (citations omitted). "An attorney should not be an

unreflecting conduit through which the opinions or desires of a client or witness are permitted to flow unchecked." *Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 1327 (11th Cir. 2002); *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1546 (11th Cir. 1993) ("An attorney's duty to a client can never outweigh his or her responsibility to see that our system of justice functions smoothly."). "Given this duty, it follows that an attorney cannot 'file first and think later,' thereby neglecting to employ his or her independent professional judgment to consider the plausibility and the appropriateness of what is asserted in the filed document." *Thomas*, 293 F.3d at 1327-28 (citations omitted) (holding that counsel "cannot shield herself from sanctions by asserting that her role was merely the passive one of filing the affidavits" and that "[b]y filing the documents containing remarks that served no purpose other than to harass and intimidate opposing counsel," counsel "at best silently acquiesced to litigation tactics that flew in the face of baseline professional norms").

   **B.   Rule 11 Sanctions.** Rule 11 sanctions are warranted: "(1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) when the party files a pleading in bad faith for an improper purpose." *Massengale v. Ray*, 267 F.3d 1298, 1301 (11th Cir. 2001) (cleaned up). A frivolity challenge requires a two-prong inquiry—"whether the

legal claims or factual contentions are objectively frivolous, and, if so, whether a reasonably competent attorney should have known they were frivolous." *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 665 (11th Cir. 2010) (citation omitted). Under the first step, "[a] factual claim is frivolous if no reasonably competent attorney could conclude that it has a reasonable evidentiary basis." *Id*. Under the second step, the question is "whether the attorney should have known they were frivolous" or, stated differently, whether "a reasonable investigation would have revealed the error to a reasonably competent attorney." *Id*. (citation omitted). Conduct is measured under "an objective reasonably competent attorney standard." *Id*. (same).

"Rule 11 [also] imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and not interposed for any improper purpose." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) (quotations omitted). While reliance on a client's statements may be reasonable in some circumstances, such reliance is frivolous and sanctionable where counsel could verify the falsity of the client's statements with available evidence. *See Insurance Benefit Administrators, Inc. v. Martin*, 871 F.2d 1354, 1357 (7th Cir. 1989) (holding attorney's reliance on client's statements, where available evidence was clearly to the contrary, was sanctionable as frivolous under Rule 11). "An attorney who signs the paper without such a substantiated

6

belief 'shall' be penalized by 'an appropriate sanction.'" *Cooter & Gell*, 496 U.S. at 393. Additionally, "[e]ven if counsel had a good faith belief that the claims were sound, **sanctions must be imposed if counsel failed to make a reasonable inquiry**." *GS Holistic, LLC v. Brother Pastor LLC*, 2023 WL 4082027, *3 (M.D. Fla. June 20, 2023) (citation omitted, emphasis added); *Pierce*, 142 F.R.D. at 693 (absence of bad faith does not prevent violation of Rule 11). Moreover, Rule 11 sanctions may be appropriate where a party exhibits "deliberate indifference" to the facts or the law. *Davis v. Carl*, 906 F.2d 533, 537 (11th Cir. 1990).

**C.     28 U.S.C. § 1927 Sanctions.** Section 1927 provides: "(a)ny attorney…who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. It allows district courts to "assess attorney's fees against litigants, counsel, and law firms who willfully abuse the judicial process by conduct tantamount to bad faith." *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991) (citation omitted). "[F]or purposes of § 1927, bad faith turns not on the attorney's subjective intent, but on the attorney's objective conduct." *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007). In this circuit, the following conduct warranted sanctions against counsel for unreasonably multiplying the proceedings: (1) carelessly or deliberately failing

to comply with orders to produce documents, (2) facilitating client's "campaign to obfuscate truth" by condoning unreasonable objections to requests for information and providing incomplete answers, and (3) participation in the coverup of discoverable information. *Malautea*, 987 F.2d at 1544 (affirming order requiring counsel to personally satisfy plaintiff's reasonable costs and attorney's fees for participating in client's scheme "to obfuscate the truth").

**D.    Rule 26 Sanctions For Discovery Abuses.** "Rule 26(g) imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of the discovery rules." *Jones v. Life Care Centers of Am., Inc.*, 2022 WL 4389727, *29 (M.D. Fla. Aug. 11, 2022) (cleaned up). This subdivision imposes "a certification requirement that **obliges each attorney to stop and think** about the legitimacy of a discovery request, a response thereto, or an objection." *Id.* (emphasis added). Under the rule, a lawyer must "make a reasonable inquiry into the factual basis of his response, request, or objection." *Id.* "[T]he signature certifies that the lawyer has made a reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to the discovery demand." *Id.* "The duty to make a 'reasonable inquiry' is satisfied if the investigation undertaken by the attorney and the conclusions drawn therefrom are reasonable under the circumstances." *Id.* "It is an objective standard similar to the one imposed by Rule 11." *Id.* "If a certification is made

in violation of Rule 26(g), 'the court ... *shall* impose upon the person who made the certification…which may include an order to pay the reasonable expenses incurred because of the violation, including a reasonable attorney's fee.'" *Malautea*, 987 F.2d at 1545 (quoting Fed. R. Civ. P. 26(g)) (emphasis in original) (affirming sanctions against counsel, finding "discovery responses and objections were interposed for the improper purposes of 'causing unnecessary delay, increasing the cost of litigation for the Plaintiff, and causing the time for discovery to end before the Plaintiff had obtained the discovery material that she needed to litigate this case.'").

      **E.**    **Rule 37 Sanctions For Discovery Abuses.** If a party or a party's officers, director, or managing agent "fails to obey an order to provide or permit discovery," "the court must require the party failing to act, **the attorney advising that party, or both** to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(A), (C) (emphasis added). Additionally, "[a] sanction against an attorney is justified when 'unnecessary litigation has resulted from the undue neglect of [ ] counsel.'" *Nukote Int'l, Inc. v. Off. Depot, Inc.*, 2015 WL 71566, *9 (S.D. Fla. Jan. 6, 2015) (citations omitted).

      **F.**    **Court's Inherent Authority To Award Sanctions.** "Besides rule-based and statutory authority, a court has inherent authority to sanction

a lawyer or party for litigation misconduct." *Jones*, 2022 WL 4389727, \*31 (citation omitted). "The inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 49 (1991). "[B]efore a court can impose sanctions against a lawyer under its inherent power, it must find that the lawyer's conduct 'constituted or was tantamount to bad faith.'" *Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 1320 (11th Cir. 2002) (citation omitted). "A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument," delays or disrupts the litigation, or hampers enforcement of a court order. *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) (cleaned up).

## III.   MONETARY SANCTIONS ARE WARRANTED.

### A.   No Factual Support for Global's Jurisdiction Challenges.

On 10-7-20, Bordeaux sought "additional time to fully investigate the facts" to assert Global's personal jurisdiction challenge (Doc. 415 at 2, ¶ 7). Although the Court granted Bordeaux's request (Doc. 417), Bordeaux failed to conduct a "full investigation" into the facts. Had she done so, she would have learned Global's challenge to this Court's jurisdiction was meritless.

Abboud formed Global LLC on 6-23-15 and identified himself as Global LLC's CEO, Chairman, Managing Director, and Secretary (Ex. 28, #26, 29-30, 32). According to Abboud's false discovery responses, only he (citizen of Florida), Kevin Chang (citizen of Taiwan), and Vaca (citizen of Ecuador) were

potential members of Global LLC (Ex. 23, 2-9-23 Abboud 1st Am. Rog. Resp. at 2-4).[2] Global's business was conducted almost exclusively from Abboud's personal residence in Florida and Global sold products within the United States (Ex. 28, #31, 43; Ex. 114). The above information was readily available to Bordeaux throughout the entirety of this litigation. In lieu of conducting a reasonable pre-filing inquiry into Global's members, Bordeaux simply accepted her clients' directives and repeatedly objected to this Court's jurisdiction over Global LLC (*See* Doc. 416, 423, 470, 518, 547).

      **1.    Doc. 423 – Global's Motion to Dismiss.** On 10-21-20, in moving to dismiss TASER's Proceedings Supplemental Complaint (Doc. 423), Bordeaux argued Global "has not conducted its business within the United States," was not "created to conduct any sales in the United States," "conducts all of its business operations in Nevis," and "the house in Davenport, Florida is merely the residential address of Steven Abboud" (*Id*. at 4-5, 10). All these statements were false (Doc. 434 at 7-14; Doc. 441, Report & Rec. at 11, 15; Ex. 28, #31, 43; Ex. 114). Although Bordeaux cited a "declaration" purportedly signed by Vaca, Bordeaux did not question why Vaca was signing the declaration rather than Abboud, let alone take any steps to determine whether Vaca had personal knowledge of the alleged facts (Ex. 5, 37:13-15). Had she

---

[2] Even these amended representations were false. Abboud, and only Abboud, was "the sole member [and]100% owner" of Global LLC (Ex. 66, Plan of Conversion).

spoken to Vaca, she would have learned that Vaca knew virtually nothing about Global and lacked knowledge concerning the statements in his declaration (Doc. 720 at 12-16). *See Bernal v. All Am. Inv. Realty, Inc.*, 479 F. Supp. 2d 1291, 1327 (S.D. Fla. 2007) (Because "[b]lind reliance on the client is seldom sufficient inquiry," counsel's failure to corroborate client's claim by speaking to the witness "does not amount to a reasonable investigation.").

       **2.**    **Doc. 518 – Global's Second Motion to Dismiss.** During the 3-9-22 conference, Bordeaux argued the Court lacked jurisdiction because the Supplemental Complaint did not assert the citizenship of Global's members (Doc. 519 at 2). Accordingly, the Court ordered TASER to file supplemental briefing demonstrating subject matter jurisdiction (Doc. 513). Bordeaux attempted to capitalize on the moment and filed Global's second motion to dismiss arguing Global should be dismissed for want of jurisdiction (Doc. 518 at 6). Bordeaux also sought to prohibit any discovery into the citizenship of Global's members (*Id.*, 3-4). Without waiting for TASER's opposition, the Court denied Bordeaux's motion (Doc. 519). Had Bordeaux complied with the letter and spirit of Rule 11, she would have spoken to her client about the citizenship of Global's members, learned complete diversity existed between Global and TASER, and advised the Court and TASER of such to avoid unnecessary motion practice, discovery, and court consideration of the meritless argument

(Doc. 513, 518-519, 522-523, 528). Instead, Bordeaux perpetuated, without any reasonable factual basis, the false notion that the Court lacked jurisdiction.

**B.    Abboud's Counterclaims Lacked Factual and Legal Support.** As demonstrated in the chart below, at the time Bordeaux filed Abboud's counterclaims (Doc. 546), Bordeaux knew, or should have known, the counterclaims (1) had no factual basis, (2) were untenable as a matter of law, and (3) were filed for an improper purpose.

| ¶ | False Allegation | Evidence Known to Bordeaux *Before* Counterclaims Filed |
|---|---|---|
| 9 22 35 47 | Abboud, personally, sold stun guns, ammunition, and accessories to Phazzer USA, LLC, Phazzer Federal Supply, Less Lethal Safety Supply, Inc., and Phazzer Holdings, Inc. ("New Licensees"). | "[O]nly Authorized Licensees contracted with PhaZZer IP" LLC ("P-IP") can supply Phazzer products in the U.S. (Ex. 71, 10-11-18 P-IP Press Release).<br><br>P-IP proposed licensees Less Lethal Safety Supply, Inc. and Phazzer Holdings, Inc. "**never got off the ground**" (Ex. 6, 4-18-22 P-IP 180:12-15, 181:18-183:7). Only Phazzer-USA, LLC (the subject of |
| 19 32 46 57 | These companies stopped purchasing supplies from Abboud because of TASER's '939 patent infringement suit | Abboud/Robinson's criminal contempt convictions) had sales (*Id.*, 181:8-15; *see also* Case No. 6:19-cv-01721-PGB-DCI, Doc. 16-1, ¶ 4, Phazzer Federal Supply "never sold, made, imported/exported, or offered to sell any" Phazzer products prior to 9-4-19 suit). P-IP's business relationship with Phazzer Federal Supply ended because of a "falling out," not |
| 6 | Abboud's damages exceed $75,000 | TASER's suit (Ex. 6, 182:4-183:10). |

Clearly, the counterclaims had no factual basis. Indeed, Abboud's discovery responses concede he had no direct contractual relationship with any P-IP licensee and no documentation whatsoever supporting any communication or product sale to any of them (Ex. 27, Abboud 2nd RFA Resp.;

Ex. 25, Abboud 3rd ROG Resp.; Ex. 19, Abboud 4th RFP Resp.). Instead, Abboud claimed—based on his say-so alone—to be an "intended third party beneficiary" of Phazzer product sales "drop shipped and invoiced by Double Dragon in Taiwan directly to the '939 Counterclaim Defendant' Licensees" in the U.S. (Ex. 25, ROG #19 Resp.), which of course would violate this Court's injunction and was contrary to Abboud's criminal contempt defense.

Additionally, the counterclaims were legally deficient[3] because (1) Bordeaux knowingly filed the counterclaims after the deadline to file amended pleadings (Doc. 555 at 3-4; Doc. 596 at 6-13); (2) knowingly filed the counterclaims without leave of Court (*Id*.); and (3) the counterclaims were barred by Florida's litigation privilege as a matter of law (Doc. 556 at 3-5; Doc. 596 at 13-14, n.7).

**C.      Bordeaux's Inflammatory and Inappropriate Filings and Discovery Responses.** In opposing TASER's motions to strike and dismiss Abboud's frivolous counterclaims, Bordeaux compounded the violations identified above by inflammatorily alleging, without any pre-filing inquiry or evidence:

- TASER "fraudulently" "misused" the "federal judiciary machinery" for 20 years (Doc. 557 at 4, 10).

---

[3] TASER expressly incorporates by reference the arguments in its Motion to Strike (Doc. 555) and Motion to Dismiss (Doc. 556).

- TASER filed "some dozen" "bogus federal legal actions" to "monopolize the market and defraud financial markets over a period of decades" (*Id.*).
- TASER "financially ruined" "half dozen or so" small enterprises (*Id.* at 10-11).
- TASER defrauded the USPTO, Middle District of Florida, District of Arizona, and Central District of California (Doc. 562 at 2-3, 5, 8, 15).
- TASER violated the Sherman Act, the Florida Antitrust Act of 1980, and committed securities fraud (*Id.* at 3, 11).
- Accused TASER and its executives of criminal conduct, insider trading, dumping stock, and slander (*Id.* at 3-4, 7).

None of the inflammatory allegations were relevant or necessary to oppose TASER's motions to strike or dismiss (Doc. 566). Bordeaux has been involved in this case for almost three years and knew none of her clients have produced *any* evidence, let alone identified *any* witnesses, to support *any* of the inflammatory allegations. Despite this, Bordeaux filed dozens of documents maligning TASER (Ex. 116, Examples of Inflammatory Filings).

**D.    False Statements Regarding Global's Existence, Business Form, Ownership and Records.** Abboud caused Global LLC to be converted to a corporation on 3-12-18 (Ex. 28, #34). After the conversion, Abboud owned, controlled, and directed Global's activities and had possession of, controlled and/or had access to Global's records (Ex. 66; Doc. 719 at 4-5, 9-12). But for a single, unauthenticated, inadmissible email purportedly from Michelle Chang ("M.Chang") (Doc. 645-4), neither Abboud nor Global have produced any documents demonstrating Kevin Chang ("K.Chang"), M.Chang or Vaca owned or controlled Global or had possession, custody or control over Global's

15

documents (Doc. 719 at 4-5). This information was readily available to Bordeaux throughout this case. Yet, and without any inquiry or evidence, Bordeaux filed numerous motions with zero factual or evidentiary basis:

| Doc. & Date | False Statements | Truth |
|---|---|---|
| 484<br>10-13-21 | • Liposerv is Global LLC's "parent corporation"<br>• Liposerv has an interest in the outcome of the case. | • Doc. 633 at 5, n.3 (Liposerv is not the parent and has no interest in this litigation) |
| 490 at 13<br>12-16-21 | • Global is owned by an Ecuadorian | • Abboud owns Global (Ex. 66) |
| 527<br>04-28-22 | • Liposerv is Global's majority owner | • Liposerv was shut down by the Ecuadorian government two years *before* Global filed its false corporate disclosure statement (Ex. 3, 31:9-25, 39:1-5; Ex. 5, 20:16-22, 23:10-15, 30:2-21) |
| 530 at 2<br>06-21-22<br><br>534 at 2-3<br>07-01-22 | • Global has been dormant/defunct for years<br>• Global's "records either no longer exist or are lost and which no longer maintains any websites or email accounts"<br>• Kevin Chang was Global's "managing member"<br>• K.Chang "kept all of Global's records in Taiwan"<br>• Global's "records were lost" when K.Chang died<br>• Abboud "never" had custody, possession, or control over Global's records and no "'right, authority, or practical ability' to produce any information"<br>• "Simple research shows G[lobal] as a defunct llc (sic) and Phazzer Global, Inc. as an active corporation" (*Id.* at 3-4)<br>• Bordeaux drafted (Doc. 633 at 6) Robinson's declaration (Doc. 530-2) attesting: | • Global LLC's business continued after the conversion (Ex. 28, RFA #37, 39, 40). Global LLC's clients, assets, and liabilities transferred to Global Corp (*Id.*).<br>• Global's records weren't lost (Doc. 656-10, 2; Doc. 712, 2-3; Ex. 117, ¶4 (detailing records produced in 2023))<br>• Abboud had Global documents (Doc. 719 at 4-5, 19)<br>• At the time of these filings, Bordeaux failed to conduct any research about Global's status (Doc. 645 at 2) and failed to produce the "simple research" she claimed to |

| | | |
|---|---|---|
| | o Abboud and Robinson started working for Global Corp in 2019; <br> o Global Corp's website was created in 2019; <br> o Global Corp had no sales until 2019; and <br> o Michelle Chang owns 100% of Leonidas IP, Inc. | have done regarding Global's status (Doc. 656-6) <br> • Robinson's declaration was false (Doc. 633 at 6-7) <br> • No evidence K.Chang was a member or manager of Global. |
| 534 at 2-3 <br> 07-01-22 | • Global "floundered" when K.Chang died <br> • M.Chang does not have Global's records (*Id.* at 4) <br> • "GLOBAL LLC has nothing in its possession, custody, and control to produce" (*Id.* at 5) <br> • Abboud does not have possession, custody, or control over Global's records (*Id.* at 6) <br> • "GLOBAL LLC simply does not have any documents" (*Id.* at 11) <br> • Coyne does not have any Global LLC documents (*Id.*) | • No evidence K.Chang kept Global's records in Taiwan <br> • No evidence M.Chang owned Leonidas IP <br> • Global LLC hadn't been converted when 2017 fraudulent transfers occurred <br> • Coyne had Global documents (Doc. 656-10 at 3-10, detailing over 21,000 records produced by Coyne in 2023) |
| 538 at 3 <br> 07-27-22 | • Global, LLC is a defunct company <br> • "There are no documents to provide" | |
| 580 at 7 <br> 11-16-22 | • Electronics transferred the alleged property to Global *Inc.* not Global *LLC* | |
| 617-1, ¶¶ 19, 25 <br> 02-13-23 | • Robinson was unable to find any Global documents on her computer. <br> • Abboud was asked about where Global's information could be and Abboud pointed to Nevis Registries or Nevis banks | • Bordeaux now claims Robinson produced her Global email account (Doc. 712 at 3). Bordeaux failed to obtain Robinson's Global email by Court-ordered deadline (Doc. 599) <br> • Bordeaux was aware Abboud and Robinson had possession, custody, or control over documents on their computers, cell phones, Gmail accounts, and Skype, WhatsApp cloud accounts (Ex. 109 at 1-2, 13) Bordeaux failed to |
| 698 at 4 <br> 06-27-23 | • "Michelle Chang is the only person that would have any additional documents that could be responsive to Global Discovery and with access to the server" | |

| | | acknowledge or collect this information. <br> • No competent evidence that Abboud relinquished control of Global or its servers to M.Chang. Only Abboud has access to Global's information (Doc. 719 at 11-12) |
|---|---|---|

**E.      Other Statements Devoid of Factual Basis.** In addition to the pleadings identified above, Bordeaux also claimed—without conducting any pre-filing inquiry or in complete disregard for the truth—that Abboud was a "midlevel manager" at Electronics, Abboud did not cause Electronics' obstruction in the underlying litigation, Abboud does not have any discoverable information in his possession, custody, or control, and Abboud had produced all responsive documents in his possession, custody, or control (Ex. 113, Statements Devoid of Factual Support). These statements were false (Doc. 719 at 4-5) and demonstrate Bordeaux's failure to comply with the spirit and letter of Rule 11 or demonstrate deliberate indifference to the truth.

**F.      Failure To Investigate, Oversee Client's Discovery Efforts, and Comply with Court Orders.** Though Bordeaux was responsible for her clients' discovery efforts since 2020, Bordeaux failed to take reasonable efforts to investigate the sources of responsive information, search, collect and produce responsive information from all sources, review the information to assess the veracity of her clients' discovery responses, and ensure her client's

compliance with their discovery obligations. Instead, Bordeaux, without any reasonable inquiry and an indifference to the truth[4], signed off on dozens of discovery responses claiming:[5]

- Abboud does not have possession, custody or control of Electronics or Global documents (Doc. 529-3);
- Abboud does not have any documents or communications concerning Abboud's rights in or title to "Phazzer" intellectual property (*Id.*);
- Abboud does not have any documents or communications concerning licenses, assignments, agreements, and contracts between Abboud, Global, P-IP or third parties concerning Phazzer Intellectual Property (*Id.*).

These discovery responses were false (Doc. 719 at 4-5) and their falsity should have been readily apparent to Bordeaux. Even the Court, without the same obligations and access as Bordeaux, readily found Abboud's lack of possession, custody, or control claim to be unbelievable (Doc. 597 at 8). Thus, Bordeaux's failure to investigate/correct these assertions falls far short of her obligations.

Bordeaux also failed to take affirmative steps to ensure her clients fulfilled their discovery obligations even after several orders compelled production and the Court warned Bordeaux she could be personally sanctioned

---

[4] Bordeaux perpetuated the false narrative that Abboud did not have possession, custody, or control over responsive documents even after the civil (10-12-17) and criminal (10-18-21 and 10-19-21) contempt proceedings wherein Abboud was identified as the one who controlled Phazzer (CR. Dkt. 107 (criminal contempt Case No. 6:20-cr-00057-PGB).

[5] Additional examples of false discovery responses, which were never investigated, questioned, or corrected by Bordeaux are in TASER's motion for sanctions against Abboud (Doc. 719) and Global (Doc. 720) and are expressly incorporated herein.

if her clients failed to comply (Doc. 512, 599, 682; *see also* Ex. 1 Timeline detailing the Court's numerous sanction warnings). For example, in response to this Court's supplementation order (Doc. 512 at 4), Vaca certified the efforts he allegedly took to locate responsive documents (Doc. 528-6). However, Vaca's deposition revealed his 4-7-22 sworn verification of 19 Global RFP responses (Doc. 528-6) were false. Specifically, Vaca testified he did *not* in fact search his email and made *no effort* to reach Coyne or M.Chang (who has a phazzerglobal.com email address) to determine the existence or location of Global documents prior to the start of his 4-21-22 deposition (Doc. 528-5 at 79-82). And, after asserting for years they lacked possession, custody and control of responsive documents and failed to produce *anything* with their Court-ordered 4-8-22 discovery supplements, Global and Abboud thereafter dumped tens of thousands of documents on TASER in 2023: ~2,100 records in February 2023, 1061 records June 2023; and ~85,000 records in July 2023 (Doc. 656-10, 2; Ex. 117, ¶¶ 3-4). Indeed, prior to the Court-ordered 4-8-22 deadline, Global had only produced a single 7-page document, and Abboud had only produced 43 email chains from his "personal email storage" (Doc. 504-2 at 8; Ex. 1 Timeline). Moreover, despite numerous court orders (Doc. 512, 523, 597, 599, 682), Bordeaux failed to search, collect, or produce any records from any computers, laptops, cell phones, or external devices. Indeed, those devices, and the records on those devices, have been lost (Ex. 109; Doc. 719 at 16-18).

Bordeaux's failure to ensure that all responsive documents, from all *known* sources, were preserved, searched, collected and produced falls short of her obligations to TASER and this Court. *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004) ("counsel must make certain that all sources of potentially relevant information are identified and placed 'on hold,'" and "must take affirmative steps to monitor compliance so that all sources of discoverable information are identified and searched."); Middle District Discovery, A Handbook on Civil Discovery Practice § 5(f) ("A party **and counsel** ordinarily have complied with the duty to respond to a document request if they have…[e]nsured **a reasonable inquiry with those persons and a reasonable search of those places** likely to result in the discovery of responsive documents.") (emphasis added); *First Coast Energy, L.L.P. v. Mid-Continent Cas. Co.*, 2015 WL 5159140, *3 (M.D. Fla. Sept. 2, 2015) ("[T]he repeated supplementation is an indication of an inadequate initial investigation followed by a disjointed effort to search for responsive documents only after the Court stepped in to address the deficiencies.").

**G.**     **Bordeaux's Failure To Prepare Global and Phazzer LLC's 30(b)(6) Representatives.** Global's corporate representative, Vaca, was woefully unprepared to answer questions about the company, despite Bordeaux's duty to present a representative who is prepared to "testify about information known or reasonably available to the organization." Fed. R. Civ.

21

P. 30(b)(6); *see also Medline Indus., Inc v. Wypetech, LLC*, 2020 WL 6343089, *3 (N.D. Ill. Oct. 29, 2020) ("An attorney's duty to prepare corporate representatives for a Rule 30(b)(6) depositions…takes place *before* the deposition begins."). Bordeaux failed to even meet or confer with Vaca prior to his testimony (Doc. 720 at 14-15). In fact, all Bordeaux did to "prepare" Vaca was provide him with the 30(b)(6) deposition notice (*Id.*). Vaca could not answer basic questions about the company or who its members were, nor could he answer questions about the company's affairs or corporate documents (Doc. 720 at 13; *see also* Ex. 90, Vaca Resolution attesting to his incompetency).[6] This utter failure to prepare a corporate representative is tantamount to a failure to appear for the deposition. *See Resolution Trust Corp. v. S. Union Co.*, 985 F.2d 196, 197 (5th Cir. 1993).[7]

Bordeaux similarly failed to prepare Phazzer LLC's 30(b)(6) corporate representative, an Abboud controlled non-party whom Bordeaux represented during these proceedings.[8] Not surprisingly, like Global, Phazzer LLC's

---

[6] Bordeaux's failure to prepare Vaca is detailed more thoroughly in TASER's Motion for Sanctions against Global (Doc. 720) which is incorporated by reference herein.

[7] And notably, even after Bordeaux's belated March 2023 disclosure of Global's conversion, Global Corp failed to produce documents or appear for a 30(b)(6) deposition following personal service on its Nevis registered agent (Ex. 88).

[8] Bordeaux engaged in significant gamesmanship regarding Phazzer LLC, including her on again/off again representation. She filed a limited appearance on behalf of Phazzer LLC promoting an unsuccessful motion to quash a subpoena duces tecum (Doc. 490, 499). She then refused to accept service of TASER's Wyoming Motion to Compel, Motion to Transfer, and 30(b)(6) deposition subpoena claiming not to

designated representative was not someone who actually knew the business, but Abboud's 18-year-old daughter Alia Abboud, who knew virtually nothing—nothing about who the owners and employees of the company were, Phazzer LLC's manufacturing facilities or whether it even manufactured products, contracts with Sang Min, etc. (Ex. 12, Ali 30(b)(6), 10:8-11:19; 25:9-27:16). Alia testified her only deposition preparation was a brief meeting with Bordeaux and McNulty to discuss the 14 deposition topics and review a few documents *when she arrived on the morning of her deposition* (*Id.*, 15:10-16:17).

Clearly, Bordeaux failure to prepare corporate representatives for their depositions or ensure designees could speak to noticed topics. Bordeaux's failures caused further delays and unnecessary expenses, with TASER's attorneys spending days preparing for representatives who had no answers.

## IV.   CONCLUSION AND RELIEF REQUESTED.

In light of Bordeaux's bad faith and willful disregard of the Rules, this Court's Orders, and her duty of candor to the Court and undersigned counsel, TASER requests that the Court order Bordeaux and her firm, jointly and severally with her clients, to pay TASER's reasonable attorneys' fees and costs arising from or relating to:

---

represent the company on the same subject matter. After these refusals, Bordeaux in fact represented Phazzer LLC's corporate representative, but did not identify the witness (Abboud's daughter) until the Zoom deposition began.

1.     Successful motions to compel relating to Abboud, Global and Coyne (Doc. 485, 529, 569);

2.     Third-party practice to obtain documents and information readily available to but refused by Abboud and Global, including through CPA Thacker, Jason Abboud, Phazzer LLC, Logan, and Stephenson;

3.     Deposition expenses associated with unprepared 30(b)(6) designees without knowledge, including Vaca and Alia Abboud;

4.     Discovery and responses to filings wholly unsupported by fact or law, including Abboud's counterclaims and Global's challenges to personal and subject matter jurisdiction (Doc. 423, 518);

5.     TASER's motions for extensions of scheduling order deadlines necessitated by Bordeaux's clients' delay and obstruction (Doc. 575, 637);

6.     TASER's Court-ordered briefing in support of its motion for leave to file its Second Amended Complaint to add Phazzer Global Corporation as the proper Global party and associated expenses in hiring Nevis counsel regarding Global LLC's conversion (Doc. 633, 656, 656-7); and

7.     This motion for sanctions and related motions for default sanctions against Abboud and Global, together with any required fee petitions.

## LOCAL RULE 3.01(g) CERTIFICATION

Counsel for TASER had numerous conferences with Ms. Bordeaux regarding this Motion and were unable to reach a resolution.

RESPECTFULLY SUBMITTED August 23, 2023.

*/s/ Gayathiri Shanmuganatha*
Pamela B. Petersen (*pro hac vice*)
Arizona Bar No. 011512
Gayathiri Shanmuganatha (*pro hac vice*)
Arizona Bar No. 030745
Jake MacKay (*pro hac vice*)
Alabama Bar No. 9600-P97I
AXON ENTERPRISE, INC.
17800 N. 85th Street
Scottsdale, AZ 85255-9603
Telephone: (623) 326-6016
Facsimile: (480) 905-2027
ppetersen@axon.com
legal@axon.com (secondary)

Ryan T. Santurri
Florida Bar No. 015698
ALLEN, DYER, DOPPELT
& GILCHRIST P.A.
255 South Orange Ave., Suite 1401
Orlando, FL 32801
Telephone: (407) 841-2330
Facsimile: (407) 841-2343
rsanturri@allendyer.com

*Attorneys for TASER International, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 23, 2023, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's CM/ECF system upon all counsel of record in the above-captioned case.

*/s/   Gayathiri Shanmuganatha*
Gayathiri Shanmuganatha

25