**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**TASER INTERNATIONAL, INC.,**

      **Plaintiff,**

v.                                         Case No: 6:16-cv-366-PGB-LHP

**PHAZZER ELECTRONICS, INC.,**
**STEVEN ABBOUD, PHAZZER**
**IP, LLC, and PHAZZER**
**GLOBAL CORPORATION,**

      **Defendants.**
_____/

## ORDER

This cause is before the Court on Taser's Motion for Default and Sanctions Against Steven Abboud.[1] (Doc. 719 (the "**Motion**")). Mr. Steven Abboud filed a Response in Opposition. (Doc. 733). Upon due consideration, Taser International Inc.'s Motion is granted.

**I.  BACKGROUND**

The history of this case has been fully discussed elsewhere in the record. (See Docs. 183, 271, 299, 441, 462). Plaintiff Taser International, Inc. ("**Taser**") instituted this action in March 2016 against Defendant Phazzer Electronics, Inc. ("**Phazzer**"), asserting claims of patent and trademark infringement, false advertising, and unfair competition. (Doc. 1). Ultimately, a default judgment was

---

[1] Taser is now known as Axon Enterprise, Inc., however for continuity purposes, the Court continues to utilize Taser.

entered against Phazzer as a sanction. (Doc. 183; *see also* Docs. 192, 267, 272–73, 300–01). Since then, Taser has engaged in post-judgment collection efforts, the Court instituted proceedings supplementary, and Taser filed an authorized supplemental complaint impleading third parties Steven Abboud (Phazzer's alleged principal) ("**Abboud**"), and two other entities, Phazzer Global, LLC ("**Phazzer Global**") and Phazzer IP, LLC ("**Phazzer IP**"), into these proceedings. (*See* Docs. 289, 293, 296, 297, 317, 320, 333, 376, 400).

Discovery in the supplementary proceedings has been unforthcoming from Phazzer IP, LLC, Diana Robinson, and Steven Abboud as elaborated on below.[2] Two years ago the Magistrate Judge granted Taser's Motion to Compel Phazzer IP's Production of Documents and directed Phazzer IP to provide supplemental responses to all 15 Requests for Production, warning that failure to comply may result in the imposition of sanctions. (Doc. 498, pp. 15–16). The Magistrate Judge issued an Order the next month directing all Defendants/Impleaded Parties to review and supplement all outstanding discovery that is ripe and to produce responsive documents by April 8, 2022. (Doc. 512). And on January 27, 2023, the Magistrate Judge granted Taser's Motion to Compel Steven Abboud to answer Interrogatories 5 and 8. (Doc. 597, p. 11). The Court again cautioned that failure to comply may result in sanctions.[3] (*Id.* at p. 12). Taser submits that Steven Abboud

---

[2] Phazzer IP, LLC's conduct is relevant because in awarding sanctions in favor of Taser and against Phazzer IP, the Court found Steven Abboud was identified in the forming documents as a member of Phazzer IP. (Doc. 771 (citing Docs. 719-35, 719-37, 719-38, 719-51)).

[3] Mr. Abboud stipulated to pay Taser an award of $5,000.00 in attorneys' fees. (Doc. 616).

2

continued to withhold discovery and engaged in tactics designed to frustrate its collection efforts such that sanctions to include entry of default judgment are warranted. (Doc. 719).

## II. LEGAL STANDARD

Rule 37 allows district court judges broad discretion to fashion appropriate sanctions for the violation of discovery orders. *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1542 (11th Cir. 1993). This Rule allows for sanctions when a party violates a discovery order or fails to attend its own deposition. *See* FED. R. CIV. P. 37(b)(2)(A), (d)(1)(A)(i). For both these offenses, the Rule authorizes various sanctions, such as striking pleadings, rendering a default judgment, and holding the disobeying party in contempt of court. FED. R. CIV. P. 37(b)(2)(A)(iii), (b)(2)(A)(vi), (b)(2)(A)(vii), (d)(3*); see also Consumer Fin. Prot. Bureau v. Brown*, 69 F.4th 1321, 1330–31 (11th Cir. 2023). The "severe sanction of a dismissal or default judgment is appropriate only as a last resort, when less drastic sanctions would not ensure compliance with the court's orders." *Malautea*, 987 F.2d at 1542; *see United States v. One 32%2C Scorpion Go-Fast Vessel*, 339 F. App'x 903, 905 (11th Cir. 2009)[4] (noting that the court need not first impose lesser sanctions if doing so would be ineffective); *see also Griffin v. Aluminum Co. of Am.*, 564 F.2d 1171, 1172 (5th Cir. 1977) ("Dismissal of a complaint with prejudice is such a drastic remedy that a district court should apply it only in extreme circumstances.") (citations

---

[4] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

omitted).[5] And dismissal or default judgment is appropriate when the party acts with bad faith and not where its failure to comply results from negligence, misunderstanding, or an inability to comply. *See Maus v. Ennis*, 513 F. App'x 872, 878 (11th Cir. 2013) (*citing Malautea*, 987 F.2d at 1542). Bad faith may be found through "delaying or disrupting the litigation or hampering enforcement of a court order." *Eagle Hosp. Physicians, LLC V. SRG Consulting, Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009).

Furthermore, Rule 37 provides that "the court must order the disobedient party, attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(b)(2)(C), (d)(3). The Supreme Court has held that the intent behind Rule 37 sanctions is both "to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent." *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 763–64 (1980) (quoting *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976) (per curiam)). This deterrence is necessary because "it is not the court's function to drag a party kicking and screaming through discovery." *Telectron, Inc.*

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

*v. Overhead Door Corp.*, 116 F.R.D. 107, 134 (S.D. Fla. 1987); *see also Malautea*, 987 F.2d at 1545 (quoting FED. R. CIV. P. 26(g)).[6]

## III. DISCUSSION

Mr. Abboud does not directly confront Taser's assertion that he engaged in the discovery abuse and delay tactics outlined in Taser's motion for sanctions. Rather, Mr. Abboud argues that Rule 11 sanctions are improper because he was not afforded time to cure. (Doc. 733, pp. 2–3). Then, Mr. Abboud dedicates two and a half pages of his response to a critique of the merits of Taser's lawsuit. (*Id.* at pp. 3–5). As a result, Taser's allegations of discovery avoidance, abuse, and deception stand unrebutted.

Taser alleged that despite the Orders compelling the production of documents and requiring supplemental responses, Mr. Abboud failed to identify documents responsive to 53/54 Requests for Production ("**RFP**"). (Doc. 719, p. 3). Mr. Abboud denied having possession, custody, or control of documents relating to Phazzer, Phazzer Global Corporation ("**Global Corp**"), Phazzer IP, LLC ("**Phazzer IP**"), and Leonidas IP Corp ("**Leonidas**"). (*Id.*). Taser contends that Mr. Abboud's failure to produce responsive documents was an intentional falsehood, because information responsive to the RFPs were stored in his personal email—stevesphazzer@gmail.com. (*Id.*). In his response and objections to Taser's

---

[6] Taser also seeks relief under Rule 11. (Doc. 719). Mr. Abboud argues that Rule 11 sanctions are premature because Plaintiff failed to allow him to cure the alleged defect under Rule 11(c)(2). (Doc. 733, p. 2). Since sanctions are warranted under Rule 37, the Court need not address Abboud's concern.

5

Second RFP, Mr. Abboud produced 43 email chains in response to RFP #27 found on his personal email. (Doc. 504-2, pp. 7–8). Taser identifies 10 categories of documents requested of Mr. Abboud and for which he disclaimed possession. (Doc. 719, pp. 4–5). For example, Taser requested information about Mr. Abboud's interest in intellectual property through third parties owned or controlled by him. (*Id.*, RFP 13). Mr. Abboud denied having responsive documents even though Leonidas owns Phazzer-related intellectual property, and Mr. Abboud was the "sole member, 100% owner, and Managing Director" of Leonidas. (Doc. 719-23, p. 11 (Abboud's answer to interrogatory, admitting he assigned a Trademark to Phazzer IP which reassigned it to Leonidas)); Doc. 719-28, ¶28 (Abboud's admission that he owned 100% of Leonidas)). Mr. Abboud denied having responsive documents in April 2020 and only admitted the transfer of intellectual property to Leonidas and his ownership interest in Leonidas in April 2022 and February 2023 after the Court ordered him to review and supplement his discovery responses. (Docs. 719-23, 719-28).

Taser also points to Mr. Abboud's deception in denying that stevesphazzer@gmail.com was his personal email and claiming instead that it was created by Mr. Michael Coyne for "the Phazzer and Chang entities." (Doc. 719, p. 6 (citing 719-15, p. 8)). That is, in their First RFPs Taser requests production of documents concerning Phazzer and Phazzer Global's formation, incorporation, operating locations, and structure from inception. (Doc. 719-15, p. 7). In response, Mr. Abboud states that he "previously searched his personal email accounts and

6

directed Barbara Robinson to search the Phazzer and Chang entities backup email account StevesPhazzer@gmail.com. (*Id.* at p. 8). Mr. Abboud asserts that stevesphazzer@gmail.com "was set up by the various Phazzer and other Chang business entities with assistance of their IT contractor Mike Coyne to backup their email communications." (*Id.*). As Taser notes, an email produced during discovery and dated June 15, 2011, proves emails to stevesphazzer@gmail.com were directed to Mr. Abboud at least four years before Mr. Coyne met Mr. Abboud. (Doc. 719, pp. 6–7 (citing Doc. 719-32; Doc. 719-11, 5:20–21)). Thus, the email account was not created by Mr. Coyne for the Phazzer and Change entities. Mr. Abboud's deception was part of an orchestrated plan to frustrate discovery.

Another example of Mr. Abboud's deceptive discovery practices is seen in his attempt to distance himself from holding an ownership interest in Phazzer Global. Taser's interrogatory number 5 asked Mr. Abboud to "identify all managers, members, employees, and owners" of Phazzer Global. (Doc. 719, p. 9 (citing Doc. 504-3, p. 5)). Mr. Abboud responded that he did not have any "current" interest in Phazzer Global. (*Id.*). Taser filed a motion to compel which was granted, and Mr. Abboud supplemented his response and claimed that he formed Phazzer Global "as a courtesy" to Kevin Chang because of Mr. Chang's limited proficiency with the English language.[7] (Doc. 719, p. 9 (citing Doc. 719-23, pp 2–4)). That said,

---

[7] Mr. Abboud's deception is best viewed in context. In the same supplemental response—prompted by the Court's threat of sanctions—Mr. Abboud also represents that Phazzer IP was formed by Jason Abboud as the sole member and owner. (Doc. 719-23, p. 4). Mr. Abboud further represented that Ms. Robinson became the 100% owner of Phazzer IP after Jason Abboud resigned in 2017. (*Id.*). Mr. Steven Abboud conveniently omitted the fact that he is

7

Mr. Abboud admitted during his deposition that Mr. Chang was an English teacher with "a very good linguistics background." (Doc. 719-2, 47:10–18). And as Taser points out, Mr. Abboud formed Phazzer Global as its sole member, executed its operating agreement and business plan, formed its Nevis bank account, and is the only person authorized to disburse its funds. (Doc. 719, pp. 10–11 (citing Doc. 719-28, #26, 29, 30, 32; Doc. 719-66; Doc. 719-42, pp. 23–25; Doc. 719-103)).

      Mr. Abboud also drafted and executed the Plan of Conversion of the interests for Phazzer Global and Leonidas in which he states that he is the 100% owner and Managing Director of both LLC's. (Doc. 719-66). Contrary to Mr. Abboud's claim that he did not recall Phazzer Global LLC being converted to Phazzer Global Corp until his memory was refreshed in February 2023, Mr. Abboud emailed his statutory agent in Nevis two weeks after being served with Taser's Supplemental Complaint and said: "I have a problem in regard to the conversion of the two LLC's to Corporations. Is there any way we can convert them back to the original LLC[] status. It is critical to do this immediately." (Doc. 719, pp. 11–12 (citing 719-77)). Simply put, like Ms. Robinson, Mr. Abboud will lie and misdirect until confronted with irrefutable evidence. Mr. Abboud perpetrated the same deception when he claimed that Leonidas LLC was created for Mr. Chang due to his limited fluency in English. (Doc. 719, pp. 13–14). And again when he lied by saying his cousin Jason

---

identified in the forming documents as a member of Phazzer IP (Docs. 719-35, 719-37, 719-38, 719-51), or that he was the manager of Phazzer IP. (Doc. 719-9, 14:14–21, 22:23–23:7). Mr. Abboud has employed straw men, or women in the case of Ms. Robinson, to frustrate discovery and accountability. Apparently, a criminal conviction for contempt meant nothing to Mr. Abboud.

Abboud formed Phazzer IP. (*Id.* at p. 15). This has been a pattern throughout the underlying litigation and these proceedings. Mr. Abboud has no respect for the rule governing these proceedings even after civil and criminal contempt convictions were imposed.[8]

## IV.   CONCLUSION

The Court finds that Defendant Steven Abboud engaged in the above-described misconduct with the subjective intent to abuse the judicial process. *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223–24 (11th Cir. 2017) ("The key to unlocking a court's inherent power is a finding of bad faith"). The Court further finds that the severe sanction of default judgment is appropriate because less drastic sanctions will not ensure compliance with the Court's orders. *Consumer Fin. Prot. Bureau*, 69 F.4th at 1330–31.

For these reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Taser's Motion for Default and Sanctions against Steven Abboud (Doc. 719) is **GRANTED**;

2. The Clerk of Court is **DIRECTED** to strike Steven Abboud's responsive pleading (Doc. 664);

---

[8]   Taser discusses other bad acts in its Motion that are attributed to Mr. Abboud, such as false responses to RFAs, Spoliation in the form of bad-faith bankruptcies (discussed in Doc. 771), and Abboud's attempt to prevent Mr. Coyne from complying with discovery. (*See generally* Doc. 719). The Court will not address each in detail, safe to say it finds these allegations to have merit.

9

3. Default Judgment is entered in favor of Taser on its Count 1 alter ego claim;[9]

4. Judgment is entered against Steven Abboud for the full amount of Taser's May 11, 2018 judgment against Phazzer Electronics, Inc. (Doc. 273) in the amount of $7,869,578.74, plus all accrued interest thereon; and

5. Taser is entitled to reasonable attorneys' fees and costs as a sanction for Steven Abboud's bad faith conduct in an amount to be determined by the Court.

**DONE AND ORDERED** in Orlando, Florida on January 17, 2024.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

---

[9] The Court granted summary judgment for Taser on the alter ego claim, and so default is entered as a sanction unlike the on-the-merits determination attendant to summary judgment.