# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

TASER INTERNATIONAL, INC.,

       Plaintiff,

v.                                           Case No:   6:16-cv-366-PGB-LHP

PHAZZER ELECTRONICS, INC.,
STEVEN ABBOUD, PHAZZER IP,
LLC and PHAZZER GLOBAL
CORPORATION,

       Defendants

_____

## ORDER

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:**   **RENEWED PETITION FOR FEES AND SANCTIONS AND ENTRY OF FINAL JUDGMENT (Doc. No. 784)**
>
> **FILED:**     **August 29, 2024**
>
> _____
>
> **THEREON** it is **ORDERED** that the motion is **DENIED without prejudice**.

The procedural history of this case has been extensively laid out elsewhere in the record, and the undersigned presumes the parties' familiarity with said history

for purposes of this Order.   But in sum, and as is relevant to the issue now before the Court, a judgment was entered against Defendant Phazzer Electronics Inc. on May 11, 2018, Doc. No. 273, and Plaintiff Taser International, Inc. ("Taser")[1] has since that time been engaged in efforts to collect on that judgment, including proceedings supplementary and extensive discovery and motions practice related thereto.   By supplemental complaint, Taser impleaded third-parties Steven Abboud ("Abboud"), Phazzer IP, LLC ("Phazzer IP"), and Phazzer Global Corporation[2] ("Phazzer Global"), Doc. No. 400, and ultimately, in January 2024, the Court entered default judgment as a sanction against each of the impleaded Defendants on all claims set forth in Taser's second amended supplemental complaint, *see* Doc. No. 659, to include an award of fees and costs against each of the impleaded Defendants for their bad faith conduct.   Doc. No. 769, 771, 774. The Court also granted summary judgment against Abboud and in favor of Taser on its veil piercing/alter ego claim and found Abboud personally liable for the May 11, 2018 Judgment against Phazzer Electronics.   Doc. Nos. 767, 770.

---

[1] Taser is now known as Axon Enterprise, Inc., however for continuity purposes, the Court continues to utilize Taser.

[2] The initial supplemental complaint named Phazzer Global LLC, and it was later determined that the proper entity was Phazzer Global Corporation f/k/a Phazzer Global, LLC.   *See* Doc. Nos. 633, 657, 659.   Thus, for purposes of this Order, the undersigned refers to Phazzer Global Corporation.

On April 11, 2024, Taser filed an initial Petition for Fees and Sanctions and Entry of Final Judgment seeking to quantify the sanctions.   Doc. No. 780.   Upon review, however, the Court denied that Petition without prejudice for several reasons, including: (1) failure to comply with Local Rule 3.01(a); (2) failure to explain why fees incurred in litigation in other jurisdictions should be awarded in this case; (3) failure to sufficiently provide a supported lodestar analysis for its requested fees; (4) failure to justify its requested expenses and costs; and (5) failure to sufficiently support its request for avoidance and execution of several trademarks.   Doc. No. 783.

Now before the Court is Taser's Renewed Petition for Fees and Sanctions and Entry of Final Judgment.   Doc. No. 784.   Specifically, Taser requests an award of fees and expenses jointly and severally against all impleaded Defendants since entry of the May 11, 2018 Judgment, avoidance of certain fraudulent transfers related to Phazzer IP, and entry of final judgment related to sanctions and the Court's January 2024 Orders, to include updated post-judgment interest calculations on the May 11, 2018 Judgment.   *Id.*   However, upon review, the renewed Petition is still deficient in several respects.

First, in the renewed Petition, Taser seeks attorneys' fees and expenses "from the date of its judgment against Phazzer Electronics on May 11, 2018 through the . . . Orders in January 2024 resolving all claims," to be imposed jointly and severally

against all impleaded Defendants (Abboud, Phazzer IP, and Phazzer Global),

because the impleaded Defendants "obstructed and frustrated collection and

discovery efforts at every turn."   Doc. No. 784, at 3, 22.   But besides citing to

general legal principles regarding the scope of appropriate sanctions, *id.* at 4–6,

Taser fails to support its claim that attorneys' fees since entry of the May 11, 2018

Judgment would be appropriate as to <u>all</u> impleaded Defendants.

In the context of awards of fees and expenses as a sanction for bad faith

litigation conduct:

> Federal courts possess certain "inherent powers," not conferred
> by rule or statute, "to manage their own affairs so as to achieve the
> orderly and expeditious disposition of cases."   *Link v. Wabash R. Co.*,
> 370 U.S. 626, 630–631, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962).   That
> authority includes "the ability to fashion an appropriate sanction for
> conduct which abuses the judicial process."   *Chambers v. NASCO, Inc.*,
> 501 U.S. 32, 44–45, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).   And one
> permissible sanction is an "assessment of attorney's fees"—an order,
> like the one issued here, instructing a party that has acted in bad faith
> to reimburse legal fees and costs incurred by the other side.   *Id.*, at 45,
> 111 S.Ct. 2123.

> This Court has made clear that such a sanction, when imposed
> pursuant to civil procedures, must be compensatory rather than
> punitive in nature.   *See Mine Workers v. Bagwell*, 512 U.S. 821, 826–830,
> 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994) (distinguishing compensatory
> from punitive sanctions and specifying the procedures needed to
> impose each kind).   In other words, the fee award may go no further
> than to redress the wronged party "for losses sustained"; it may not
> impose an additional amount as punishment for the sanctioned party's
> misbehavior.   *Id.*, at 829, 114 S.Ct. 2552 (quoting *United States v. Mine
> Workers*, 330 U.S. 258, 304, 67 S.Ct. 677, 91 L.Ed. 884 (1947)).   To level
> that kind of separate penalty, a court would need to provide

procedural guarantees applicable in criminal cases, such as a "beyond a reasonable doubt" standard of proof. *See id.*, at 826, 832–834, 838–839, 114 S.Ct. 2552. When (as in this case) those criminal-type protections are missing, a court's shifting of fees is limited to reimbursing the victim.

That means, pretty much by definition, that the court can shift only those attorney's fees incurred because of the misconduct at issue. Compensation for a wrong, after all, tracks the loss resulting from that wrong. So as we have previously noted, a sanction counts as compensatory only if it is "calibrate[d] to [the] damages caused by" the bad-faith acts on which it is based. *Id.*, at 834, 114 S.Ct. 2552. A fee award is so calibrated if it covers the legal bills that the litigation abuse occasioned. But if an award extends further than that—to fees that would have been incurred without the misconduct—then it crosses the boundary from compensation to punishment. Hence the need for a court, when using its inherent sanctioning authority (and civil procedures), to establish a causal link—between the litigant's misbehavior and legal fees paid by the opposing party.

*Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107–08 (2017); *see Eldredge v. EDCare Mgmt., Inc.*, 766 F. App'x 901, 908–09 (11th Cir. 2019) ("Certainly, the dollar amount of a sanctions award must 'bear a financial nexus to the excess proceedings.' That is, the dollar amount of the sanctions 'may not exceed the costs, expenses, and attorneys' fees reasonably incurred because of [the] conduct' giving rise to the sanctions." (quoting *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997)));[3] *see also* Fed. R. Civ. P. 37(b)(2)(C) (limiting expenses and fees to those

---

[3] Unpublished opinions of the Eleventh Circuit are cited as persuasive authority. *See* 11th Cir. R. 36–2.

caused by the failure to comply with Court Orders); *Winslow v. Indiheartandmind, Inc.*, No. 21-CV-80800, 2021 WL 6197745, at *7 (S.D. Fla. Dec. 30, 2021) (awarding fees as a sanction under both Rule 37 and the court's inherent authority, but limiting the fees to those incurred in proceedings related to the bad faith conduct).

Here, as it relates to the underlying motions and Orders on which Taser's quantification request is based, the undersigned has discerned no specific request from Taser—nor an Order from the Court—awarding fees and expenses relating back to the May 11, 2018 Judgment.  Specifically, in seeking default against Abboud, Taser focused on Abboud's conduct during discovery since leave to file the supplemental complaint was filed, and requested fees and expenses for "Abboud's bad faith conduct" but for no specific period.  Doc. No. 719.[4]  The Court's Order granting Taser's motion likewise related to same and awarded "reasonable attorneys' fees and costs as a sanction for Steven Abboud's bad faith conduct."  Doc. No. 774.  With respect to Phazzer Global, Taser also focused on its bad faith conduct during the proceeding supplementary discovery process after the

---

[4] Notably, Taser attached to its motion a "Discovery Timeline," on which the first date entry is June 10, 2019, which related to third-party discovery, and the first entry relevant to the impleaded Defendants is the motion for leave to implead/file a supplemental complaint on October 21, 2019.  Doc. No. 719-1.  Taser relies on this "Discovery Timeline" in the renewed Petition, Doc. No. 784, at 11, without reconciling such timeline to the request for imposition of fees and expenses back to the date of Judgment—May 11, 2018.

filing of the supplemental complaint, and asked for fees and expenses related thereto.   Doc. No. 720.   The Court granted Taser's motion as unopposed based upon same and "awarded reasonable attorneys' fees and costs against Phazzer Global Corporation."   Doc. No. 769.[5]   And regarding Phazzer IP, Taser's motion addressed "bad faith throughout these Proceedings Supplemental," as well as during bankruptcy proceedings regarding Phazzer Electronics, and requested fees and expenses based upon same, with the Court granting the request for fees and expenses based on those arguments.   Doc. Nos. 722, 771.[6]

Thus, given that neither Taser's motions nor the Court's Orders addressed fees back to the date of the May 11, 2018 Judgment, and absent explanation from Taser in the renewed Petition, the undersigned cannot conclude that it is proper to award fees, jointly and severally against all impleaded Defendants, back to the date of the May 11, 2018 Judgment.   *Cf. Env't Mfg. Sols., LLC v. Peach State Labs, Inc.*, 274

---

[5] The Court reserved jurisdiction to determine whether such attorneys' fees should be awarded against Phazzer Global jointly and severally with its counsel.   Doc. No. 769, at 2–3.   Taser does not address this issue in its current briefing, Doc. No. 784, so the undersigned deems the issue abandoned for purposes of this Order.   In addition, the undersigned notes that on January 23, 2024, Judge Byron denied Taser's motion for sanctions against attorney Joelle Bordeaux, who represented Abboud and Phazzer Global for the majority of the proceedings supplementary.   Doc. No. 775.

[6] As it relates to Phazzer IP, the Court also awarded the fees jointly and severally against Diana Robinson, Doc. No. 771, at 10, but Taser foregoes any sanctions award against Robinson in the present filing.   Doc. No. 784, at 21 n.6.

F. Supp. 3d 1298, 1318–19 (M.D. Fla. 2017) (declining to award fees unsupported by evidence other than conjecture that the fees were causally related to the sanctionable bad faith conduct).

Moreover, in the renewed Petition, Taser has not demonstrated that <u>all</u> expenses and legal fees incurred by Taser dating back to the date of May 11, 2018 Judgment against Phazzer Electronics are causally related to misbehavior by <u>each</u> of the impleaded Defendants.   *See Goodyear*, 581 U.S. at 108.   While it may be that Taser engaged in collection efforts thwarted by the impleaded Defendants since entry of the Judgment, Taser makes no such showing in the renewed Petition.   Doc. No. 784.[7]   The Court notes that Abboud, Phazzer IP, and Phazzer Global were not impleaded into this litigation until the filing of the supplemental complaint on August 24, 2020, Doc. No. 400, *see also* Doc Nos. 376, 398, and the supplemental complaint appears to be the first time there were any collection efforts regarding at least one impleaded Defendant—Phazzer IP.   The Court will not otherwise sift through the hundreds of docket entries since entry of the May 11, 2018 Judgment to

---

[7] Absent legal authority from Taser in support, the undersigned does not find that lack of response to the renewed Petition from the impleaded Defendants alone is a sufficient basis to grant the requested relief in full.   *Cf. Rogers v. Amalgamated Transit Union, Loc. 689*, No. 1:14-CV-01650 (APM), 2017 WL 1628867, at *4 (D.D.C. May 1, 2017) (reducing amount of fee award even in light of unopposed motion as to fees that were not supported by requisite causal link between the requested sanction and bad faith conduct as required by *Goodyear*).

attempt to make Taser's argument for it.  *See Nuvasive, Inc. v. Absolute Med., LLC,* No. 6:17-cv-2206-CEM-LHP, 2024 WL 2246285, at *3 (M.D. Fla. May 17, 2024) ("[I]t is Plaintiff's burden, and not the Court's, to adequately brief its damages." (citation omitted)).

Second, and relatedly, Taser asks that any fee and expense award be imposed jointly and severally against all impleaded Defendants without citation to any legal authority or evidence in support.   Doc. No. 784, at 22.   The Court has not previously made such a determination.   Doc. Nos. 769, 771, 774.   Notably, while Abboud has been found to be the alter-ego of Judgment Debtor Phazzer Electronics and Phazzer Global found to be a mere continuation of the entity (Doc. Nos. 769, 770, 774), the same is not true regarding Phazzer IP, and it appears that the sanctions requested against Phazzer IP are based on different bad faith conduct.   *See* Doc. Nos. 719, 720, 722, 769, 771, 774.   Thus, Taser must explain, with citation to evidence and legal authority, why imposition of <u>all</u> fees and expenses jointly and severally against <u>all</u> three impleaded Defendants would be appropriate.   To the extent joint and several liability is not legally supportable, Taser must explain, by citation to evidence and legal authority, which fees and expenses are attributable to each impleaded Defendant's bad faith conduct.

Third, the request for outside counsel attorney fees is problematic in at least one additional respect, with regard to the requested fees for Ryan Santurri, Esq. and

the firm of Allen Dyer Doppelt & Gilchrist, P.A.   Taser provides a chart with its renewed Petition stating that Attorney Santurri worked 100.2 hours at a range of $375–475 per hour, but then includes a notation for "support staff" at 40.5 hours, without explanation.   Doc. No. 784-2, at 2.   It is entirely unclear to the undersigned how the total fees for Attorney Santurri were calculated at $47,843.50, or if the amount for the undefined "support staff" is even recoverable.   *Id.* Attorney Santurri also makes a lone statement in his declaration that "[a]dditional work was performed by associates (Brock Hankins, $275/hr.) and paralegals ($95-$125/hr.)," but Attorney Hankins is nowhere identified in the renewed Petition or the chart provided, nor is there any information for any paralegals from Attorney Santurri's firm.   *See* Doc. No. 784-10, at 5; Doc. No. 784-2, at 2.

In denying Taser's first Petition, the undersigned alerted Taser to the deficiencies regarding the lodestar analysis, but Taser's renewed Petition again falls short.   At bottom, it is not the Court's job to sift through hundreds of pages of billing records when this issue goes unexplained by Taser.   *See Nuvasive, Inc.*, 2024 WL 2246285, at *3 (citing *DownTown Sports, Inc. v. Legacy AH, LLC*, No. 1:08-CV-03842-JOF, 2011 WL 13168395, at *4 n.5 (N.D. Ga. Nov. 10, 2011) ("[I] is not the court's job to sift through hundreds of pages of documents to figure out the precise amount of hours spent on the claims eligible for reasonable attorney's fees.")); *see also Halmos v. Ins. Co. of N. Am.*, 515 F. App'x 851, 854–55 (11th Cir. 2013) ("In our

adversarial system, the burden rests on the parties to present evidence in an ordered manner.   The court will not—and should not—have to sift through unorganized materials to determine damages." (citations omitted)).   Accordingly, absent further explanation/evidence to support Taser's Petition in this regard, the undersigned cannot recommend that the requested relief be granted as to the total fees sought for Attorney Santurri's firm.

Fourth, Taser's chart attached to its renewed Petition contains a column titled "Total Expenses" for each of its six attorneys, which totals in sum to $10,113.55. Doc. No. 784-2, at 2-3.   Taser provides no explanation for these "Total Expenses," other than to simply list them in the renewed Petition and attached chart.   Doc. No. 784, at 11-15; Doc. No. 784-2, at 2–3.   Nor are these "Total Expenses" discussed in Attorney Peterson's or Attorney Santurri's declarations, *see* Doc. Nos. 784-1, 784-10, thus leaving it entirely unclear whether these "Total Expenses" are reasonable and recoverable, are related to this litigation, and/or whether they are duplicates of the other expenses that Taser specifically addresses in its renewed Petition and attached evidence (*i.e.*, expenses for professional services, depositions, travel, process server, and copying and shipping).   *See* Doc. No. 784, at 16–21; Doc. Nos. 784-3 through 784-7.

Thus, it once again appears that Taser is asking the Court to do its job for it and to cull through the approximately 274 pages of attorney billing records to see if

any entries sufficiently describe these expenses.    And again, the undersigned previously explained to Taser the need to support its fees and expenses.    Doc. No. 783.   While Taser is undoubtedly entitled to sanctions in this case, this does not absolve Taser of its duty to support its requested sanctions with evidence and argument.    *See Halmos*, 515 F. App'x at 854 (citing *Ondine Shipping Corp. v. Cataldo*, 24 F.3d 353, 356 (1st Cir. 1994) ("[I]t is the parties' responsibility to marshal evidence and prove their points.    Litigants cannot expect the court to do their homework for them."); *Spectrofuge Corp. v. Beckman Instruments, Inc.*, 575 F.2d 256, 270 n. 47 (5th Cir. 1978) ("Federal courts are sufficiently burdened as it is without having to spend hours finding and organizing the parties' evidence.")).    Absent such argument or citation to specific evidence, the undersigned cannot recommend that Taser be awarded this requested relief.

Finally, the Court also notes that there are discrepancies in Taser's renewed Petition and evidence as to the total amounts sought for fees and expenses of its outside counsel.    *See* Doc. No. 784, at 11, 21, Doc. No. 784-2, at 2–3 (referencing both $214,784.60 and $216,555.60 in totals).    The renewed Petition and evidence also contain discrepancies in the amount of expenses sought for printing and shipping costs.    Doc. No. 784, at 21, Doc. No. 784-1, at 6 ¶ 12 (referencing both $2,583.49 and $2,669.91).    Thus, the total amount Taser requests in conclusion also appears to be miscalculated.    *See* Doc. No. 784, at 21–22, 25.

Given that the undersigned has already provided Taser an opportunity for re-briefing the issue of quantification, Doc. No. 783, the Court would be well within its discretion to deny any unsupported requests entirely, or to make a substantial across-the-board reduction in the requested fees and/or expenses.  *See generally Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) ("When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut.").   Nonetheless, given the history of this case, and that sanctions are clearly warranted, Doc. Nos. 769, 771, 774, the undersigned finds it appropriate to provide Taser one *__final__* opportunity to brief the issue of quantification.

Accordingly, the Renewed Petition for Fees and Sanctions and Entry of Final Judgment (Doc. No. 784) is **DENIED without prejudice**.  It is **ORDERED** that within **thirty (30) days** of the date of this Order, Taser shall file a second renewed petition of no more than **thirty (30) pages** in length (excluding attachments) properly supporting its requested fees and expenses and other relief, to include, without limitation, addressing the issues identified in this Order and properly briefing the issue of quantification pursuant the Court's Orders (Doc. Nos. 769, 771, 774).   Each requested form of relief (regardless of whether the Court has addressed it in this Order) *__must__* be supported with citation to applicable legal authority and

evidence.   The second renewed petition will stand alone and must attach all argument and evidence Taser wishes the Court to consider—Taser shall not incorporate by reference prior motions or evidence.   *See* Local Rule 3.01(f).   Upon referral, a report and recommendation will promptly issue on the renewed filing without further opportunity for briefing.   **Thus, should any requests in the second renewed petition be unsupported by argument and evidence in support, the undersigned will recommend that the particular request be denied.**

DONE and **ORDERED** in Orlando, Florida on December 9, 2024.

LESLIE HOFFMAN PRICE
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

- 14 -